**Pearle SCHWINGEL, Plaintiff–Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 70, Docket 80–6023.**

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1980.

Decided Oct. 2, 1980.

---

Paul M. Ryther, Bath, N. Y. (Southern Tier Legal Services, Bath, N. Y., Martin A. Hotvet, Robert A. Russell, Bath, N. Y., of counsel), for plaintiff–appellant.

David Rothenberg, Asst. U. S. Atty., Rochester, N. Y. (Richard J. Arcara, U. S. Atty., W. D. New York, Rochester, N. Y., Frank V. Smith, III, Regional Atty., Annette N. Kasle, Asst. Regional Atty., Dept. of Health and Human Services, New York City,) of counsel, for defendant–appellee.

Before FEINBERG, Chief Judge, LUMBARD and OAKES, Circuit Judges.

FEINBERG, Chief Judge:

Plaintiff Pearle Schwingel, an 84–year–old widow, appeals from a judgment of the United States District Court for the Western District of New York in favor of defendant Patricia Roberts Harris, Secretary of Health and Human Services, in plaintiff's action to review the Secretary's determination that she had been overpaid $929.95 in Supplemental Security Income (SSI) benefits and that recovery of such overpayment should not be waived. On this appeal, plaintiff challenges neither the fact nor the amount of overpayment, but claims error only in the Secretary's determination not to waive the overpayment. For reasons given below, we vacate the judgment of the district court with instructions to remand the matter to the Secretary for further appropriate proceedings.

I

Plaintiff began receiving monthly SSI benefits in April 1974 as an aged individual, under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 et seq. The Act limits eligibility for benefits to individuals whose statutorily defined "resources" do not exceed $1,500.[1] 42 U.S.C. § 1382(a)(1)(B). Plaintiff's problems with the Social Security Administration stem from her receipt in November 1974 of a retroactive payment of $500 in SSI benefits, which brought the balance in her bank account to $1,929.15. The balance continued to exceed $1,500 until March 1976, when the Administration informed plaintiff that her SSI benefits would be terminated. Soon thereafter, she was told that the Secretary would require repayment of $1,445.65 in excess payments made between April 1974 and March 1976. After reconsid-

---

1. "Resources" include cash and other assets not excluded by statute or regulations. The principal exclusions are the person's home, household goods, personal effects, automobile, and other property essential to self-support.
   See generally 42 U.S.C. § 1382(b); 20 C.F.R. §§ 416.1201 et seq. (1980).
   In this case, it is undisputed that plaintiff's bank account is her sole "resource."

eration at plaintiff's request, the Secretary waived overpayment for the period prior to April 1975, but insisted on repayment of $929.95 paid subsequently, on the ground that plaintiff had failed to report her excess resources and "should have been aware of the resource limitations especially because of the work done concerning them when you applied." [2]

In September 1976, plaintiff had a de novo hearing before an Administrative Law Judge (ALJ), pursuant to 42 U.S.C. § 1383(c). The issues before the ALJ were whether there had in fact been an overpayment of SSI benefits to plaintiff and, if so, whether the agency should waive recovery of such overpayment. Plaintiff, represented by counsel, was the only witness at the hearing, although various documents were also introduced into evidence. In his decision, issued in November 1976, the ALJ found that plaintiff lived alone in a house in Cohocton, New York, with a total monthly income of $154 in social security disability benefits and $90 in interest from a trust created in her late husband's estate. Her only resource was the bank account mentioned above.

The ALJ determined that no overpayment had been made to plaintiff because the $500 SSI check in November 1974 should have been considered as part of her "resources" under the Act. The ALJ observed:

To hold that the claimant is over resources because of the fact that she had deposited the supplemental security income check in addition to some monies which she had previously had on deposit would seem clearly to defeat the purposes and intent of Title XVI. This being the case the claimant was clearly entitled to supplemental security income benefits during the time period in question and consequently there can be no overpayment of benefits as originally claimed by the Administration in the total amount of $929.95.

The ALJ, therefore, never reached the issue whether any overpayment of SSI benefits to plaintiff should be waived.

In March 1978, sixteen months later, the Social Security Administration's Appeals Council notified plaintiff, under the applicable regulation,[3] that it was reopening her claim. The notice informed plaintiff that in the absence of persuasive evidence to the contrary the Council was prepared to find that plaintiff had been overpaid from April 1975 to March 1976 and that she knew or could have been expected to know that the amount in her bank account would affect her eligibility for benefits. The notice gave plaintiff twenty days to submit additional evidence and notified her that she could request an appearance before the Council to present oral argument. In a letter dated April 26, 1978—more than twenty days after the Council's notice but before it issued its decision—plaintiff's attorney wrote to the Council, explaining the delay and en-

**2.** The record gives no concrete indication of any "work done concerning [resource limitations] when [plaintiff] applied" beyond this cryptic assertion in the notice of reconsideration. This is not the only gap in the Administration's records; see note 10 infra.

**3.** 20 C.F.R. § 1477 (1980) provides:

An initial, revised, or reconsidered determination of the Social Security Administration or a decision or revised decision of a presiding officer or of the Appeals Council which is otherwise final ... may be reopened:

(a) Within 12 months from the date of the notice of the initial determination ... to the party to such determination for any reason, or

(b) After such 12–month period, but within 2 years from the date of the notice of the initial determination to the party to such determination, upon a finding of good cause for reopening such determination or decision, or

(c) At any time when such initial, revised, or reconsidered determination or decision or revised decision was procured by fraud or similar fault of the claimant or some other person.

The regulations further specify that "good cause" for a reopening after 12 months have elapsed does not include a change of legal interpretation or administrative ruling. Id. § 416.1481. In this case, however, the Council acted on the basis of advice from the Administration's SSI Bureau that the ALJ had failed to apply a dispositive prior decision of the Commissioner of Social Security. It thus appears to have met the "good cause" requirement.

closing an affidavit in which plaintiff swore that "Nobody explained to me that there was a limit on my savings or other resources for SSI eligibility. It was not explained to me that I had to report changes in the amount of my savings." Plaintiff also stated that the first time the limit had been explained to her was in March 1976, just before she received the notice of overpayment.

In an opinion dated May 5, 1978, the Appeals Council reversed the ALJ's construction of the Act, as follows:

The administrative law judge held that the $500 should not be considered as part of the $1500 resource limit. The Appeals Council notes that section 1613(a) of the Social Security Act and 416.1210 of Regulations No. 16 do not list supplemental security income checks as an excludable resource. On January 8, 1975, the Commissioner of Social Security approved a policy under which the Administration considers retroactive title XVI payments as an excludable resource in the quarter in which they are received and in the following quarter. There is no provision for further exclusion.

In this case, the retroactive payment was considered an excludable resource through March 31, 1975. Based on the Social Security Act and Regulations, as supplemented by the Commissioner's policy statement, the claimant's countable resources exceeded $1500 beginning April 1, 1975. . . .

On this theory, the Council found that there had been an overpayment for the period from April 1975 to March 1976, which had earlier been calculated to be $929.25. However, this determination still left open the question whether to waive the overpay-

ment, an issue that the ALJ had found unnecessary to decide. Rather than remanding the question to the ALJ, the Appeals Council proceeded to decide it, as follows:

The remaining question is whether adjustment or recovery of the overpayment to the claimant may be waived. The record shows that the claimant knew there was a $1500 limit on resources. The Appeals Council believes the claimant knew or could have been expected to know that she should have notified the Administration that her liquid resources exceeded $1500.

This determination was made upon the record before the ALJ, supplemented by a memorandum from the agency's own Bureau of SSI and the notice to plaintiff. The Council did not consider the affidavit submitted by plaintiff with the April 26 letter from her counsel.[4]

In January 1979, plaintiff filed an action in the district court, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), to review the Council's decision.[5] Both parties moved for summary judgment on the basis of the administrative record, and in November 1979 the district judge granted judgment to defendant. This appeal followed.

II

The issues before us relate to the question whether the Secretary should have waived recovery of the overpayment of $929.95; plaintiff does not attack the finding that an overpayment was made. The relevant statutory provision, 42 U.S.C. § 1383(b), states:

Whenever the Secretary finds that more or less than the correct amount of

---

4. Since the decision makes no reference to the supplemental affidavit, it is not clear whether the Council was simply unaware of it or refused to consider it because of its late arrival. We think some explanation would have been appropriate in the latter case, in view of the plausible account given by plaintiff's attorney of the reasons for the delay in the April 26 letter that accompanied the affidavit. We therefore assume, in the absence of evidence or argument to the contrary, that the affidavit was

received prior to the Council's decision but not brought to its attention. In view of its plain materiality to the issue of plaintiff's knowledge, we believe it should be taken into account in the proceedings on remand.

5. The Appeals Council granted plaintiff's request for an extension of time to permit the filing of her civil action after the 60-day limitation period set in the statute, 42 U.S.C. § 405(g).

benefits has been paid with respect to any individual, proper adjustment or recovery shall, subject to the succeeding provisions of this subsection, be made by appropriate adjustments in future payments to such individual or by recovery from or payment to such individual . . . . The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual . . . who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience, or (because of the small amount involved) impede efficient or effective administration of this subchapter.

The relevant agency regulations provide that an individual will be at fault when an overpayment resulted from one of the following:

(a) Failure to furnish information which the individual knew or should have known was material;

(b) An incorrect statement made by the individual which he knew or should have known was incorrect (this includes the individual's furnishing his opinion or conclusion when he was asked for facts); or

(c) The individual did not return a payment which he knew or could have been expected to know was incorrect.

20 C.F.R. § 416.552 (1980). The regulations also provide that whether a claimant is "without fault" depends upon "all the pertinent circumstances" and that a claimant's age, comprehension, memory, and physical and mental condition are to be considered in making the necessary determination. Id.

Appellant argues, first, that substantial evidence does not support the Secretary's decision that appellant was not "without fault" and, second, relying on such cases as *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and *Marcus v. Califano*, 615 F.2d 23 (2d Cir. 1979), that the procedure used here denied plaintiff the fair hearing called for by statute and required by due process of law. The crux of the latter claim is that the ALJ, who saw and heard plaintiff, never made a determination of fault, while the Appeals Council, which had only the cold record before it, did. The Secretary responds that plaintiff's "ambiguous statements" at the hearing were insufficient to rebut "the presumption of regularity which surrounds public officers"—in this case, the presumption that standard procedures had been followed in informing plaintiff of the conditions of SSI eligibility. The Secretary also seeks to distinguish *Califano v. Yamasaki*, supra, and *Marcus v. Califano*, supra, and argues that the failure of the Appeals Council to hear plaintiff's testimony does not on this record vitiate its finding that she "was not without fault in causing the overpayment."

We believe that plaintiff has the better of the argument that the procedure followed here did not afford her the fair hearing guaranteed by the Act. For this reason, we see no need to decide whether she was denied due process of law or whether the Secretary's decision not to waive recovery was supported by substantial evidence.

In *Califano v. Yamasaki*, supra, the Supreme Court considered statutory provisions and regulations, similar to those at issue here, governing waiver of overpayments of benefits under Title II of the Social Security Act.[6] Justice Blackmun pointed out for a unanimous Court[7] that:

The Court previously has noted that a "broad 'fault' standard is inherently sub-

---

**6.** As the Court noted, however, the Title II provisions are cast in mandatory terms ("there shall be no" recovery when waiver is proper), while the language of Title XVI is permissive (Secretary "shall make such provision as he finds appropriate"). 442 U.S. at 693–94 n.9, 99 S.Ct. at 2554 n.9. In view of the near identity of the substantive provisions relating to the definition of "fault" in both contexts, we do not consider this distinction controlling. See *Barnett v. Califano*, 580 F.2d 28, 31–32 (2d Cir. 1978).

**7.** Justice Powell did not participate.

ject to factual determinations and adversarial input." *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 617 [94 S.Ct. 1895, 1905, 40 L.Ed.2d 406] (1974). As the Secretary's regulations make clear, "fault" depends on an evaluation of "all pertinent circumstances" including the recipient's "intelligence . . . and physical and mental condition" as well as his good faith. 20 C.F.R. § 404.507 (1978). We do not see how these can be evaluated absent personal contact between the recipient and the person who decides his case. *Evaluating fault, like judging detrimental reliance, usually requires an assessment of the recipient's credibility*, and written submissions are a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale [citation omitted].

442 U.S. at 696–97, 99 S.Ct. at 2555 (emphasis supplied). Similar considerations apply when the agency determines whether a recipient is "without fault" in receiving an overpayment of SSI benefits. It is, of course, true that plaintiff did receive an oral hearing before a disinterested examiner, the absence of which was fatal in *Yamasaki*. But because the ALJ concluded that no overpayment had been made, he never reached the issue of fault and therefore never made "an assessment of the recipient's credibility" on this issue.[8]

The Secretary does not claim that the Appeals Council made any such assessment, but appears to argue instead that no such assessment was necessary and that plaintiff's credibility was not important. Thus, the Secretary stresses that in the quoted language from *Yamasaki* the Court said that "[e]valuating fault . . . *usually* requires an assessment of the recipient's credibility" (emphasis supplied), implying that sometimes it does not. The Secretary also points out that unlike the ALJ in *Marcus v. Califano*, supra, the Appeals Council here did not disbelieve plaintiff's statement at her hearing "that she did not remember or didn't think she understood" the resource limitations and reporting requirements of the SSI program; the Secretary argues instead that such claims are not sufficient to rebut the asserted presumption of administrative regularity in the processing of plaintiff's application for benefits.

We do not agree. This is precisely the sort of case in which determination of credibility is most appropriate. Plaintiff testified in September 1976 that she did not think she ever understood that she was supposed to inform the agency if her savings went over $1,500. And she might well have thought, as did the ALJ, that an SSI check should not be included in such total in any event. It is not at all unlikely that an 80–year–old widow living alone and probably not in the best of health[9] did not comprehend the eligibility requirements, perhaps because she was never so advised, as she swore in the affidavit that the Appeals Council did not consider. See note 4 supra. Against this, the Secretary argues only the presumption that plaintiff was adequately advised by an agency employee, at a time when, as plaintiff's counsel effectively documents, the SSI program had just started and was in administrative chaos around the nation.[10] Under these circumstances, plain-

---

**8.** Indeed, to the extent that the ALJ made findings on the issue of overpayment he seemed to accept the credibility of plaintiff.

**9.** Plaintiff's recollection of what had occurred when she applied for SSI benefits in 1974 was the subject of questioning by the ALJ in September 1976. In the winter of 1977–78, plaintiff "suffered a heart attack" and in April 1978, plaintiff stated she had recently had eye surgery.

**10.** See, e. g., Administration of the Supplemental Security Income Program: Hearings Before the Subcomm. on Oversight of the House Comm. on Ways and Means, 94th Cong., 1st

Sess., Vol. 2, 1–5, 16 (1975). According to a Senate staff study of the early operation of the SSI program, which commenced in January 1974, "[f]requent and substantial errors in payments, massive backlogs in claims processing, and lengthy waiting lines in district offices attested to the unreadiness of the Social Security Administration to handle the new SSI program." Staff of Senate Comm. on Finance, Report on the Supplemental Security Income Program, 95th Cong., 1st Sess. 6 (1977).

This very case shows signs of this turmoil, for basic elements of plaintiff's file seem to have disappeared, including her original application for benefits. According to the informa-

tiff's credibility was quite important,[11] and she was entitled to a finding on the issue by an agency official who had heard her testimony.[12] By proceeding to decision without this critical step, the Council deprived plaintiff of her right to a fair hearing. Cf. *Barnett v. Califano*, 580 F.2d 28, 31 (2d Cir. 1978) (protracted delays deprive SSI applicants of reasonable opportunity to be heard required by 42 U.S.C. § 1383(c)(1)).

The Secretary argues that it would set a harmful precedent to permit a finding of lack of fault to be based upon a recipient's unsubstantiated claim of failure to remember or to understand the reporting requirements. But the purpose of our remand is precisely to permit a determination of whether there is substance to plaintiff's claim here, particularly in view of her April 1978 affidavit stating that she had not in fact been told the requirements until March of 1976. Moreover, we do recognize the possibility that lack of memory or understanding may be a sufficient basis for a finding of lack of fault, taking into account, as the agency's regulations expressly require, the plaintiff's age, *comprehension, memory,* and physical and mental condition; to hold otherwise would render this requirement idle. The principle we affirm here is simply that the Secretary must adhere to the dictates of fair procedure in making determinations in which credibility is a critical issue.

Accordingly, we reverse the judgment of the district court with instructions to re-mand the case to the Secretary for further appropriate proceedings, which should include giving plaintiff an opportunity to supplement the record with testimony on the subjects covered by the April 1978 affidavit. In view of plaintiff's age and ill health and the delays up to this time in the administrative process, we order any further proceeding to be commenced within 60 days of the date hereof.

tion given us at oral argument, the standard application form contains a provision by which the applicant acknowledges having received all the required information about eligibility, including reporting rules. While the presence of this form in plaintiff's file would not necessarily have been conclusive in establishing knowledge, its absence certainly weakens the agency's argument that the presumption of regularity in its officials' discharge of their functions should be given dispositive weight in this case.

11. The agency implicitly concedes as much by seeking in its brief to impeach the credibility of plaintiff's April 1978 affidavit by referring to her subsequent statement, in seeking an extension of time to file a civil action, that she is "very forgetful and easily confused." It is precisely because of the ambiguities of the cold record that a decision in this case should be made by an official who has heard directly from Mrs. Schwingel.

12. We note in this connection that Congress amended Title XVI in 1976 to conform the SSI decision–making procedures set out in 42 U.S.C. § 1383(c) to those governing social security and Medicare hearings, which have been held to be subject to the requirements of the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. See, e. g., *White v. Harris*, 605 F.2d 867, 870 (5th Cir. 1979). Section 554(d) of the APA provides that "the employee who presides at the reception of evidence . . . shall make the recommended decision or the initial decision . . . ." In this case, of course, the ALJ did make "the initial decision," but not on the issue of plaintiff's fault.