**Helen FOX, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 86 CV 0454.**

United States District Court, E.D. New York.

March 9, 1989.

Robert, Huber & Lerner, Hempstead, N.Y. (Charles Robert, of counsel), for plaintiff.

David M. Nocenti, Asst. U.S. Atty., and Andrew J. Maloney, U.S. Atty., E.D.N.Y., for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action brought under Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended ("Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), to review a final determination of the Secretary of Health and Human Services ("Secretary"), which found that plaintiff received an overpayment of $6,839.28 in Supplemental Security Income ("SSI") benefits. The Secretary has moved for judgment on the pleadings. Fed.R. Civ.P. 12(c).

Plaintiff, a recipient of SSI benefits, was found to have been overpaid SSI benefits for the period December 1, 1982 through September 30, 1984 due to "excess resources" (Tr. 82–83). Upon reconsideration, the determination of the Secretary was affirmed (Tr. 92). Plaintiff requested a hearing (Tr. 93–94), which was held on April 17, 1985 (Tr. 23–81). The Administrative Law Judge ("ALJ") before whom plaintiff appeared considered the case *de novo*, and on July 30, 1985 found that plaintiff had been overpaid $6,839.28 in SSI benefits from December 1, 1982 through September 30, 1984 (Tr. 9–17). The decision of the ALJ became the final decision of the Secretary when the Appeals Council summarily affirmed the decision on December 18, 1985 (Tr. 2–3).

## FACTS

Plaintiff is a forty-three year old woman who is suffering from multiple sclerosis. She has two children, Deborah and Lauren Prior, ages 19 and 17, respectively, who live with her (Tr. 29).

In June 1981, plaintiff applied for Social Security Disability Benefits and SSI benefits as a claimant suffering from multiple sclerosis (Tr. 29). The application for benefits was denied by the Secretary and plaintiff appealed. In January 1982, the Secretary reversed its original decision, and granted plaintiff benefits retroactive to date of application (Tr. 30). Plaintiff received a retroactive SSI check in the amount of $3,000.

On April 5, 1984, plaintiff completed a questionnaire issued by the Secretary to determine a claimant's continuing eligibility for SSI payments (Tr. 95–103). Plaintiff provided bank books to support her responses and then agreed to answer the questions of a claims representative. The representative found, based on the resources available to plaintiff indicated by the bank books, that plaintiff had "excess resources" from December 1, 1982 to the present and, therefore, she was not entitled to monthly SSI benefits.

On August 14, 1984, plaintiff withdrew the balance of monies in the bank accounts which amounted to $6749.10 (Tr. 127).

On September 3, 1984, the Secretary issued a decision terminating plaintiff's SSI and Medical benefits because of alleged excess resources. The Notice stated: "You have excess resources for December 1982 on. For any month in which you have resources worth more than $1,500, you are not eligible to receive any Supplemental Security payment. In determining the amount of your resources, we consider only the value of certain real property, or other things you may own, such as cash, stocks and bonds, savings or checking accounts."

On September 20, 1984, the Secretary issued an Overpayment Notice advising plaintiff that not only were the ongoing SSI benefits and Medicaid to be terminated, but that plaintiff owed the defendant $6,839.28 for the following reasons: "We have determined that you received $6,839.28 more in supplemental income payments than you were due. This over-payment occurred for the periods December 1, 1982 through September 30, 1984 because your resources exceeded the allowable limit of $1,500.00" (Tr. 82).

On October 1, 1984, plaintiff requested a reconsideration of the Secretary's decision, and stated as her reasons: improper notice and improper application of overpayment rules including waiver of overpayment (Tr. 84).

On December 10, 1984, the Secretary rendered a reconsideration decision which simply affirmed the original decision of September 20, 1984 (Tr. 92).

Nonetheless, plaintiff still attempted to resolve the matter by providing the Secretary with corroborating documentation that the monies in the bank accounts were not hers, but were her daughters' monies for their education. The Secretary was advised by letter dated December 15, 1984 from plaintiff's sister-in-law, Patricia Coleman, that she gave money to her niece, Lauren Prior, as a gift. Mrs. Coleman further stated that the money was given to the plaintiff to be used for her niece's educational purposes only, and that Coleman now had the money back in her possession (Tr. 119).

On April 1, 1985, plaintiff stated in another Overpayment Recovery Questionnaire that there was no overpayment because the monies in question were loaned from Mrs. Coleman to her daughters for educational purposes only. In addition, plaintiff advised that she did not have sufficient income or resources to repay the alleged overpayment (Tr. 120–23).

On April 17, 1985, a hearing was held before an Administrative Law Judge ("ALJ"). The plaintiff, represented by counsel, testified that the money in the bank accounts was made up of gifts received from her sister-in-law (Tr. 25) but that she did not know for sure why the accounts bore her name (Tr. 36). On July 30, 1985, the ALJ found that the plaintiff's testimony was not credible and affirmed

the decision of the Secretary (Tr. 9–17). On November 18, 1985, the Appeals Council summarily affirmed the ALJ's decision (Tr. 2).

## DISCUSSION

Factual findings made by an ALJ in support of his decision are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Varela v. Secretary of Health and Human Services*, 711 F.2d 482, 484 (2d Cir.1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). "Substantial evidence" has been found to mean "more than a mere scintila. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The Act provides that an individual is eligible for SSI benefits if an individual's resources are no more than $1500. 42 U.S.C. § 1382(a)(1)(B). The regulations define "resources" as "cash, liquid assets, or any property that an individual ... owns and could convert to cash to be used for his support and maintenance." 20 C.F.R. § 416.1201 (1988). The regulations provide further that "[i]f the individual has the right, authority or power to liquidate the property ... it is considered a resource." *Id.*

In the hearing before the ALJ, the Secretary established that the plaintiff had several bank accounts representing "resources" which exceeded the statutory limit of $1500. Thus, it was incumbent upon the plaintiff to demonstrate that the funds were not resources available to her. As indicated in the facts, the plaintiff asserted during the hearing before the ALJ that these funds were gifts from her sister-in-law, Patricia Coleman, to plaintiff's two daughters. The plaintiff contended that these funds merely were being held by her for her daughter's upcoming education expenses. Plaintiff speculated that the only reason the accounts bore her name along with her daughters was because her daugh-

ters were minors and her name was required if the funds were to be withdrawn. The ALJ found that plaintiff's testimony did not comport with the documented evidence presented in the form of bank account summaries and photocopied passbook accounts. Due to these discrepancies, the ALJ found plaintiff's testimony to be unpersuasive and concluded that plaintiff's resources exceeded the $1500 limit during the period from December 1982 through August 1984 (Tr. 15).

It is the function of the fact finder to pass on the credibility of a witness. *See Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 705 (2d Cir.1980). Having determined that plaintiff's testimony was unpersuasive, and that she did, in fact, have control over the monies in the joint accounts, the ALJ inquired no further. In this, the ALJ erred. It is the ALJ's duty to develop the record fully and fairly, 20 C.F.R. § 404.944, even if, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983); *Decker v. Harris*, 647 F.2d 291, 299 (2d Cir.1981). Once the initial finding of overpayment was established, it was incumbent upon the ALJ to determine whether the overpayment could be waived. 20 C.F.R. §§ 404.501–404.515 (Subpart f). The ALJ failed to develop the record by probing into the issues of whether the plaintiff was at fault, and whether repayment would either be against equity and good conscious or against the purpose of Title II of the Act. 20 C.F.R. § 404.506 (when waiver may be applied.)

For reasons not elaborated upon, the ALJ stated in his evaluation of the evidence that "while the issue of waiver of overpayment *mistakenly* appeared on the notice of hearing and was raised peripherally by counsel at the hearing ... said issue is premature since it must first be requested and considered at the initial and reconsideration levels" (Tr. 15) (emphasis added). The ALJ's assumption that the waiver issue was premature ignores three important

considerations: (1) that plaintiff's "Request for Reconsideration" explicitly claimed waiver as a reason for reconsideration (Tr. 84); (2) that in plaintiff's "Request for Hearing," although she altered her claim somewhat, she included her inability to repay the overpayment as one of the reasons for appeal (Tr. 93); and finally (3) in the ALJ's opening remarks at the hearing, the ALJ himself observed that plaintiff's claim centered on whether plaintiff was overpaid, and if so, whether the overpayment could be waived (Tr. 26).

The Secretary has promulgated regulations under 42 U.S.C. § 404(a)(2)(B) stating that where an overpayment has occurred, repayment will be waived where an individual is deemed to be without fault. 20 C.F.R. §§ 404.506, 404.507. Only the actions of the claimant are considered; actions by the Social Security Administration which caused the overpayment are irrelevant. Under 20 C.F.R. § 404.507, an individual is considered to be at fault where an overpayment resulted from: (a) an incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) failure to furnish information which he knew or should have known to be material; or (c) with respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

In determining fault, the Secretary must take into account the claimant's particular circumstances. 20 C.F.R. § 404.507. Pursuant to this requirement, the Second Circuit has previously found that: lack of memory or understanding may be a sufficient basis for a finding of lack of fault, taking into account, as the agency's regulations expressly require, the plaintiff's age, comprehension, memory, and physical and mental condition; to hold otherwise would render this requirement idle. *See Schwingel v. Harris,* 631 F.2d 192, 198 (2d Cir. 1980) (*quoted in Doherty v. Heckler,* 588 F.Supp. 115 (E.D.N.Y.1984). Accordingly, the ALJ's finding that plaintiff was unresponsive to certain questions should be reviewed in light of plaintiff's severe physical disability (Tr. 15). Under the facts of this case, the ALJ has clearly failed to determine whether plaintiff was at fault in causing the overpayment which she received.

In addition to establishing fault, it must be shown that recovery of the overpayment would either defeat the purpose of Title II of the Act, or would be against equity and good conscience. 20 C.F.R. § 404.506. In examining whether repayment would defeat the purpose of Title II of the Act, the ALJ is required to specifically determine whether repayment would deprive the claimant of income required for ordinary and necessary living expenses. 20 C.F.R. § 404.508. *See Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1046–47 (2d Cir.1984). Beyond plaintiff's statements that welfare grants did not provide "enough money to put food in the house," (Tr. 56) the ALJ made no inquiries as to whether repayment would deprive plaintiff of necessary income for living expenses.

Finally, the ALJ failed to determine whether the requirement of repayment would be inequitable or against good conscience because plaintiff has either relinquished a valuable right or has changed her position for the worse in reliance upon the overpayment. 20 C.F.R. § 404.507. The Secretary, by way of example in 20 C.F.R. § 404.509, determined that it would be inequitable to require repayment by a recipient who used her benefit to enroll her daughter in college, thus changing her position and incurring a financial obligation (§ 404.509, example 2). The facts of this case, also involving an overpayment together with the recipient's intention to fund her daughter's college education, require that the Secretary apply the same equitable considerations in determining plaintiff's repayment obligation.

Because the ALJ incorrectly limited his inquiry merely to the issue of whether overpayment occurred, I remand this case to the Secretary for a consideration of whether the claimant was at fault and whether repayment would defeat the purpose of Title II of the Act or be against equity and good conscience. The matter is

remanded for the Secretary for further proceedings consistent with this opinion.

SO ORDERED.