Ermano VALENTE, Plaintiff-Appellee,

v.

**SECRETARY OF HEALTH AND
HUMAN SERVICES,**
Defendant-Appellant.

**No. 590, Docket 83–6282.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1984.

Decided May 3, 1984.

**1038**

Arthur J. Aronson, New York City (Lewis S. Fischbein, Kraver & Martin, New York City, on brief), for plaintiff-appellee.

Michael P. DiRaimondo, Sp. Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Miles M. Tepper, Patrick B. Northup, Asst. U.S. Attys., Brooklyn, N.Y., on brief), for defendant-appellant.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

The Secretary of Health and Human Services ("Secretary") appeals from an order of the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge*, granting plaintiff Ermano Valente's motion for judgment pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (1976 & Supp. V 1981), reversing the Secretary's decision requiring Valente to repay $19,-859.60 in overpayments received as Supplemental Security Income ("SSI") benefits under the Social Security Act, *id.* §§ 301–1397f (the "Act"). The Secretary had found that Valente was not without fault in causing the overpayments and that requiring him to make repayment would not be against equity or good conscience and would not defeat the purposes of the Act. The district court reversed the decision of the Secretary, ruling that Valente was not at fault and that it would not be inequitable to permit him to keep the overpayments. On appeal, the Secretary argues that the district court's order should be reversed and judgment entered in her favor because the court applied the wrong legal standard and because substantial evidence supports the Secretary's decision. For the reasons below, we reverse and remand for further administrative proceedings.

## I. BACKGROUND

Valente became disabled in 1975 and thereafter began receiving SSI disability benefits. In 1980, the Social Security Administration ("SSA") determined that his disability had ceased in October 1976 and that from February 1977 to January 1980 Valente had received a total of $19,859.60 in "entitlement overpayment[s]," *i.e.*, disability "benefit payment[s] ... to or on behalf of an individual who fails to meet one or more requirements for entitlement." 20 C.F.R. § 404.510a (1983). SSA demanded repayment. Valente's request that the Secretary waive recovery of the overpayments was denied initially and on reconsideration. Valente appealed this determination and was given a de novo hearing before an administrative law judge ("ALJ").

### A. The ALJ's Decision

Valente did not appear at the hearing before the ALJ but was represented by his wife, who apparently had made all of the pertinent contacts with SSA. The facts as described by the ALJ on the basis of SSA's file on Valente and testimony and exhibits presented by Mrs. Valente are as follows.

In August 1975, Valente filed an application for SSI benefits for himself, his wife, and his two children on the ground that he was disabled due to a heart condition. He and his family were awarded benefits,

which they began to receive in 1975. Valente returned to work in February 1976. In April 1976 he informed SSA of his return to work, and on July 9, 1976, SSA sent him a letter ("July 1976 letter") stating that his benefits would continue until September 1976 while he engaged in a nine-month trial work period to test whether he could work despite his impairment. The letter also stated that Valente would be contacted at the end of the trial work period and his case would be reviewed to determine whether he was "still disabled within the meaning of the law"; if Valente was found no longer disabled, his benefits would be terminated three months later. The last paragraph of the July 1976 letter began with the following advice:

> If you have any questions about your claim, stop working, or need help in reporting, please telephone or visit any social security office. The people there will be glad to help you.

SSA did not contact Valente in September as promised, and the disability checks continued to arrive monthly. Valente continued working until June or July of 1977, when he once again became physically unable to work. He resumed full-time employment in October 1978 and remained employed at least until December 1980. Mrs. Valente notified SSA that Valente had again returned to work, but the Valentes heard nothing more from SSA. The checks kept coming.

Mrs. Valente testified that after Valente resumed working in 1978, she visited the local SSA office on two or three occasions and telephoned it monthly for six or seven months to inform SSA that Valente had again resumed working. She was able to give physical descriptions of the employees to whom she spoke in person, but had no record of the dates of her communications or the names of persons to whom she had spoken. She testified that these employees told her that her family was entitled to the benefits and that they should cash the checks, not return them. Mrs. Valente also testified that the reason she kept calling and visiting the SSA office was that she thought her family was not entitled to benefits when her husband was employed.

In October 1979, SSA sent Valente a questionnaire regarding his income. Based on his response, SSA concluded that Valente was no longer disabled, and on February 1, 1980, it informed him that the last disability payment he had been entitled to receive was for the month of January 1977. On February 15, 1980, SSA advised the Valentes that they had received overpayments for 35 months, totaling $19,859.60, which would have to be repaid.[1] There was no record in the SSA files of any other contact with the Valentes after the July 1976 letter regarding Valente's trial work period.

The ALJ found that Valente's disability had ceased in October 1976; that he had engaged in substantial gainful activity from February 1976 to June 1977 and from October 1978 until at least January 1980; and that Valente was not entitled to benefits beginning with the month of January 1977.[2] The ALJ found that Valente had been overpaid benefits in the total amount of $19,859.60 and that he was not without fault in causing the overpayments. The ALJ's opinion stated as follows:

> Since the claimant was aware that he was not entitled to his disability insurance benefits once he became gainfully employed, his period of entitlement ended in January, 1977, three months after a nine month successful work attempt. The claimant was aware that he was not entitled to these benefits, but did continue to cash the checks, therefore, the Ad-

---

1. Benefits were awarded to Valente and his wife and children. For convenience we occasionally refer to the recipient of the overpayments simply as "Valente." The Secretary has waived recovery from the children but not from Valente or his wife for benefits received by them or the children.

2. It appears that the ALJ erred in finding that Valente was not entitled to benefits beginning in January 1977, since SSA had found that the last month of entitlement was January 1977, and the first month for which SSA sought recovery was February 1977.

ministration cannot find that the claimant is without fault in causing the overpayment and, as described in section 204(b) of the Act,[3] waiver is denied and repayment is required.

(Decision of ALJ dated August 10, 1982 ("ALJ Decision"), at 3–4.) (footnote added)

The ALJ concluded that requiring repayment would not be against equity or good conscience and would not defeat the purposes of the Act. He therefore denied the request for waiver of repayment. The ALJ's decision became the final decision of the Secretary.

### B. *The District Court's Decision*

Valente commenced the present action in the district court, contending that the Secretary's decision was not supported by substantial evidence. The Secretary answered, contending that her decision was supported by substantial evidence, and both sides moved for judgment on the pleadings.

At the argument of these motions, Valente's counsel pointed out that during many months in the period for which repayment was demanded Valente had been disabled and not working, and counsel argued that repayment of benefits received in those months should not have been required. After hearing both sides, the district court found that Valente had been without fault as to all overpayments. The court pointed out that, contrary to the advice of the July 1976 letter, SSA had not contacted Valente again for several years regarding his entitlement to benefits (Transcript of hearing of June 24, 1983 ("Tr."), at 9), and that in the interim SSA employees kept telling Mrs. Valente to deposit the checks (*id.*). The court observed that the ALJ had made no finding that he did not believe Mrs. Valente's testimony regarding her repeated communications with SSA (*id.* at 6), nor any finding that either Mr. or Mrs. Valente was literate or had sufficient education or sophistication that they would

be expected to keep records of their communications with SSA (*id.* at 7). The court described Mrs. Valente as "a woman who barely understands English" (*id.* at 9), and stated its own "surmise," based on the signature on the Valentes' financial statement, that the Valentes were "barely literate" (*id.* at 7).

Counsel for the Secretary suggested that if the court found that Valente had been without fault, it should remand the case to the ALJ for further findings on the question of whether the requirement of repayment would be inequitable or contrary to the purposes of the Act. (*Id.* at 9–10.) The court, however, ruled as follows:

> THE COURT: I find, Mr. Di Raimondo, on the basis of the record, that it will not defeat the purpose of the Act if that overpayment were waived, and I find, Mr. Di Raimondo on the basis of the record, that it would not be against equity, and good conscience, if that result were reached.
>
> I am looking at this financial statement questionnaire which has been submitted. There is no way on the basis of this information, that th[ese] people at this stage, can make that kind of a repayment.
>
> I am finding there is no evidence, not only no substantial evidence, no evidence in the record to support the conclusion reached by the Administrative Law Judge.
>
> No basis for his finding, and also determining there is a waiver, there is no need to remand this case.
>
> If you submit an order, I will sign it.

(*Id.* at 10–11.)

The court thereafter entered an order as follows:

> ORDERED, that the plaintiff's motion be granted upon the grounds that plaintiff is without fault in causing overpayments by the Secretary of Health and Human Services and that it would be against

---

**3.** Section 204(b) of the Act, 42 U.S.C. § 404(b), is part of a general provision concerning recovery of overpayments under the Act; the standard for waiving recovery contained in that section parallels the standard provided in § 1631(b)(1), 42 U.S.C. § 1383(b)(1), for waiver of recovery of overpayments in the SSI context.

equity and good conscience to permit recovery by the United States of said overpayments . . . .

The Secretary has appealed, contending that the district court's order should be reversed because the court (1) erred in concluding that substantial evidence did not support the Secretary's decision that Valente was not without fault in connection with the overpayments, and (2) misapplied the legal standard for determining whether recovery of the overpayments would defeat the purposes of the Act or be against equity or good conscience. We reverse and remand to the Secretary for further proceedings because, applying the proper legal standards, we are unable to determine whether or not substantial evidence supports the Secretary's determination.

## II. DISCUSSION

### A. *The Statutory Scheme*

Section 1631(b)(1) of the Act, 42 U.S.C. § 1383(b)(1), provides the framework for recovery by the Secretary of an overpayment of SSI benefits. That section provides, in pertinent part, as follows:

> The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience . . . .

■ The Secretary's determination of whether these factors have been satisfied may not lightly be overturned. First, the district court must uphold a decision by the Secretary that a claimant was not without fault if it is supported by substantial evidence in the record as a whole, because that determination is factual in nature. 42 U.S.C. § 405(g); *Center v. Schweiker,* 704 F.2d 678, 679–80 (2d Cir.1983) (per curiam); *Dorman v. Harris,* 633 F.2d 1035, 1040 (2d

Cir.1980). Further the issues of whether repayment would defeat the purposes of the Act or be against equity or good conscience implicate an exercise of informed judgment, and the Secretary has considerable discretion in making these determinations. *Cf. United States v. Marrero,* 705 F.2d 652, 656 n. 6 (2d Cir.1983) ("Matters such as whether 'a miscarriage of justice' 'would likely result' are questions neither of law nor fact, but rather call essentially for the exercise of sound judgment . . . . The determination of such a question may be disturbed only [for] abuse[ ] [of] discretion"). Factual determinations by the Secretary in relation to these issues must be upheld if supported by substantial evidence, *see Sierakowski v. Weinberger,* 504 F.2d 831, 835–36 (6th Cir.1974); and the Secretary's exercise of her judgment on the basis of such factual determinations is entitled to considerable deference. The court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review. *See Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978) (disability).

■ Our statutory mandate as an appellate court is the same as that of the district court, *i.e.,* to review the administrative record to determine (1) whether there is substantial evidence to support the Secretary's findings of fact, and (2) whether there has been an abuse of discretion. *See Viehman v. Schweiker,* 679 F.2d 223, 226–27 (11th Cir.1982) (overpayment); *McNeil v. Califano,* 614 F.2d 142, 145 (7th Cir. 1980) (disability). If we agree with the district judge's decision, we may of course adopt his reasoning if he has applied the correct legal standard; but we may do so only after having conducted our own plenary review of the administrative record. Thus, our focus is not so much on the district court's ruling as it is on the administrative ruling. Nonetheless we are constrained to comment on the rulings of the district court in the present case since it appears that the court did not properly recognize the respective roles of the court

and the Secretary with respect to factual and judgmental determinations, and did not apply the correct legal standards.

In making its own finding that Valente was without fault for having received the overpayments, the district court focused on four factors: (1) the failure of SSA to contact Valente after September 1976 as it had advised it would, (2) the testimony that SSA employees had told Mrs. Valente to retain the checks, (3) the ALJ's failure to make findings as to Mrs. Valente's credibility, and (4) the ALJ's failure to make findings as to the literacy, education, and sophistication of the Valentes. As to the first factor, the district court's reliance on SSA's failure to follow up was inappropriate because, as discussed in Part II.B., below, 20 C.F.R. § 404.507 (1983) provides that any fault of SSA in causing overpayments does not relieve the individual of fault. As to the matter of SSA employees' advising the Valentes that they were entitled to keep the checks, that was a factual question to be determined by the Secretary. We agree that the question of credibility was crucial to a proper resolution of this question, and that the administrative treatment of Mrs. Valente's credibility was at best opaque. The court's responsibility, however, was not to resolve the issue of credibility or to make its own findings of

fact but to remand the matter to the Secretary for further findings.[4]

■ Further, the district court's ruling as to the equity of requiring Valente to repay the overpayments appears to have been based on an erroneous view of the statutory standard.[5] Assuming that the recipient can show that he is without fault, the statutory standard places the burden on him to show also that repayment would either be inequitable or would defeat the purposes of the Act. *E.g., Center v. Schweiker, supra,* 704 F.2d at 680; *Sierakowski v. Weinberger, supra,* 504 F.2d at 836. In making its oral ruling, the district court instead applied a standard that requires a waiver of repayment if, in the view of the court, it would *not* be inequitable and would *not* defeat the purposes of the Act *not* to recover. This, in effect, placed the burden on the Secretary to show that equity and the purposes of the Act required recovery, which is an inversion of the statutory standard.

Nonetheless, we conclude that even applying the proper statutory standard, the Secretary's decision cannot be sustained on the present record.

### B. *The Fault Factor*

We have several difficulties with the ALJ's determination that Valente was not

---

**4.** We are somewhat less concerned with the ALJ's failure to make findings as to the Valentes' education, intelligence, and sophistication, perhaps because in our view the record does not support the district court's conclusions in this regard. For example, although the court "surmise[d]" that "these people are barely literate" (Tr. 7), and questioned whether Mrs. Valente was sufficiently sophisticated to be expected to write down the names of SSA employees with whom she spoke (*id.*), the record is clear that Mrs. Valente, who handled all of the family's contacts with SSA, is employed as a bookkeeper. We note further that, so far as the record reveals, the Valentes did not appear before the court, and the district court based its "surmise" solely on its view that the signature on a financial form looked as if the signer were illiterate. Even if the record had not revealed that Mrs. Valente had an occupation in which the keeping of records is central, the court surely had an inadequate basis for a finding of near illiteracy. And in any event, the view of the court was plainly an insufficient basis upon

which to order the entry of judgment for the plaintiff rather than a remand to the Secretary.

Moreover, the court described Mrs. Valente as "a woman who barely understands English." (*Id.* at 9.) We are unaware of the basis for this assessment, since the transcript of the hearing before the ALJ, which does not indicate that a translator was present, does not suggest that Mrs. Valente had any difficulty whatever in understanding the ALJ or in testifying responsively and coherently.

**5.** We note that the final order entered by the district court recited the proper legal standard. However, we are inclined to believe that the court applied the standard he enunciated in making his oral ruling at the hearing, rather than the standard recited in the order. This is especially so since the order signed was that submitted by Valente's counsel pursuant to the court's instruction at the close of oral argument and did not necessarily reflect additional consideration by the court.

without fault in retaining overpayments for the 35-month period following January 1977. We find his conclusion flawed principally because he (1) did not adequately explore at least one of the circumstances 20 C.F.R. § 404.507 required him to consider; (2) did not apparently consider at all the applicability of 20 C.F.R. § 404.510a; and (3) did not make any findings as to Mrs. Valente's credibility which would enable us to assess the substantiality of the evidence to support his factual findings.

In § 404.507, the Secretary has promulgated regulations construing the "without fault" term of the statute and listing factors to be considered in determining whether a recipient was without fault. This regulation makes clear, first, that recovery may not be waived unless the individual was without fault in connection with the overpayment, even if SSA was at fault in making the overpayment. In addition, § 404.507 provides that in determining whether the individual was at fault, SSA is to consider "all pertinent circumstances," including the recipient's age, intelligence, education, and physical and mental condition, and whether he (1) received the overpayment as a result of (a) an incorrect statement he made that he knew or should have known was wrong, or (b) a failure to furnish information he knew or should have known was material; or (2) accepted a payment he knew or could have been expected to know was incorrect.

Although the ALJ recited these criteria at the beginning of his opinion, he did not indicate how, or whether, he applied them. Most pertinently, § 404.507 expressly required the ALJ to consider Valente's physical condition. The ALJ found that Valente did not work from June 1977 to October 1978, and he noted Mrs. Valente's testimony that her husband had been hospitalized and had been unable to work during those months. There is no indication, however, that the ALJ considered these facts as they related to the question before him. If during those months Valente was disabled within the meaning of the Act,[6] he was entitled to SSI benefits. If he was entitled to benefits, he was not only "without fault" in receiving them; such benefits would not be "overpayments" at all.[7] *See* 29 C.F.R. § 404.510a. Further, if he was so entitled, he may also have been entitled to another nine-month trial work period after he resumed work in October 1978, plus an additional three months' benefits after the expiration of that period.

It is not material that Mrs. Valente did not make these arguments to the ALJ or present him with definitive evidence that in June 1977 Valente again became disabled within the meaning of the Act. Mrs. Valente appeared without counsel, and the ALJ thus had a duty " 'to scrupulously and conscientiously probe into, inquire·of, and explore for all the relevant facts.' " *Dorman v. Harris, supra,* 633 F.2d at 1040 (quoting *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 43 (2d Cir.1972)). Yet he did not inquire at all into the medical circumstances of Valente's failure to work for more than a year during the period in question. Had the ALJ made a conscientious examination into those circumstances, it might well be that, considering just the factor of Valente's physical condition, he would have been forced to conclude that Valente need not make repayments with respect to some 27 of the 35 months at issue.[8]

**6.** Under § 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A), an individual is disabled for purposes of receiving SSI benefits "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...."

**7.** As to any payment that was not an "overpayment," of course, questions of fault, inequity, and the purposes of the Act do not come into play. Thus if on remand the ALJ determines that the Valentes were entitled to benefits for any of the months in question, he should rule without further ado that no recovery of such a payment is required.

**8.** The record does not reveal the exact dates on which Valente stopped and resumed work during the period in question. The ALJ found that he worked from February 1976 to June 1977, and from October 1978 on, suggesting that Valente was not working for at least 15 months. If he was "disabled" in June 1977 and was entitled

Further, had the ALJ considered § 404.-510a of the Secretary's regulations, he might have been required to conclude that Valente was without fault for the entire 35-month period. Section 404.510a provides that an individual who accepts an entitlement overpayment is "without fault" where he "accepts such overpayment because of reliance on erroneous information from an official source within the [SSA] . . . with respect to the interpretation of a pertinent provision of the . . . Act or regulations pertaining thereto." We have interpreted this regulation as requiring a finding that the claimant was without fault in circumstances not materially dissimilar to those at issue here. Thus, in *Dorman v. Harris, supra,* an individual who had been receiving disability benefits returned to work and, according to his testimony, advised SSA of his return. Dorman cashed his benefit payment checks for the first nine months after he resumed working, knowing that he was to continue to receive benefit payments for a nine-month trial period. When he received a check for the tenth month, however, he

> sought advice from the SSA about the propriety of cashing the check. Dorman note[d] he was told during this occasion, and on a subsequent visit in April, 1976, that if he did not hear anything from the SSA Headquarters in Baltimore, he could continue to endorse the benefits payments. The SSA's silence, he was purportedly told, indicated that no determination had been made that his status as a "disabled" person had changed.

633 F.2d at 1037. In remanding to the Secretary for further proceedings, we stated that "if Dorman relied on the[ ] erroneous recommendations [of the SSA employ-

ees], he was not at fault in accepting the overpayments. 20 C.F.R. § 404.510a (1980)." *Id.* at 1040.

Mrs. Valente's testimony that SSA employees had advised her that Valente was entitled to keep the checks suggests that her husband's case too may be governed by this portion of the regulations.[9] In this regard it is also pertinent to note that the July 1976 letter had stated that SSA would contact Valente and review his case to determine whether he was still disabled "within the meaning of the law"—a question encompassing a number of statutory parameters which the lay claimant may be poorly equipped to answer (*see, e.g.,* note 10 *infra*); and it had advised Valente to consult any SSA office if he had any questions. Yet the ALJ neither mentioned § 404.510a in his initial recitation of the pertinent regulations nor gave any other indication that he considered it, in the context of this evidence in the record, to be relevant to the determination of Valente's fault.

It is, of course, conceivable that the ALJ sub silentio rejected the notion that § 404.-510a was applicable because he did not believe Mrs. Valente's testimony that SSA employees told her to keep and cash the checks. But, as noted by the district court, the ALJ made no finding as to Mrs. Valente's credibility. We infer that he may well have credited her testimony to some extent since he made no finding that the Valentes had failed to report to SSA that they were still receiving checks, and at the hearing he appeared to view these reports as proof of the Valentes' awareness that they were not entitled to the checks. (*E.g.,* Transcript of Administrative hearing of March 9, 1982 ("Admin.Tr."), at 26.) Yet,

---

to a nine-month trial return to work in October 1978 plus three months of benefits following the trial period, the total would be 27 months.

**9.** Valente also invokes 20 C.F.R. § 404.510(g), which exonerates from fault an individual who has received overpayments due to

> [t]he continued issuance of benefit checks to him after he sent notice to the Administration of the event which caused or should have caused the deductions provided that such con-

tinued issuance of checks led him to believe in good faith that he was entitled to checks subsequently received.

This provision is inapplicable to Valente because it relates only to "deduction overpayments," as defined in § 404.510, not to "entitlement overpayments," which are at issue here. Section 404.510a, explicating the term "without fault" as it relates to entitlement overpayments, contains no provision similar to § 404.510(g).

Mrs. Valente's consistent testimony was that though she contacted SSA repeatedly because she felt the checks must soon stop, on each occasion the SSA employee she spoke with told her they were entitled to keep the check. Mrs. Valente testified, for example, that "[t]here was one girl who was very rude ..., she says, if you weren't [e]ntitled to checks you wouldn't be getting it [*sic*]." (*Id.* at 24.) Certainly there was no indication in the testimony or in SSA files that any employee responded to these reports by telling Mrs. Valente that Valente's eligibility had ceased. Thus, if the ALJ did credit Mrs. Valente's testimony that she reported receipt of the checks to SSA employees, we cannot see upon what basis he could have found that those employees did not advise her to retain them.

Where, as here, credibility is a critical factor in determining whether the claimant was without fault, the ALJ must have stated explicitly whether he believed the witness's testimony. *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981); *accord Viehman v. Schweiker, supra,* 679 F.2d at 227–28. Without such a finding here, we are at a loss to discern the ALJ's rationale for his determination that the Valentes were at fault.

Finally, we note that the Secretary relies heavily on Mrs. Valente's testimony to the effect that she kept reporting the receipt of the checks to SSA because she did not believe the Valentes were entitled to them.[10] While the record supports the view that the Valentes were skeptical of their entitlement to benefits while Valente was working, nothing in the record supports the supposition that they believed they were not entitled to benefits when Valente again became unable to work in June 1977. Indeed, both the testimony and the ALJ's description of it are strongly to the contrary. Mrs. Valente gave this account of her trip to the SSA office to report that her husband had again become unable to work:

> In, when he got out of job again in seventy-seven now all this time [h]e was working from you know the time I had gone there and called but when he stopped working again in seventy-seven, again I went up the[re] in person. This time the guy that I spoke to was tall, lanky with dark hair, and I told him that [ ]now he was out of a job. He asked me w[ ]ere we still getting checks, I said yes. Then he told me if the checks stop, don't get nervous or you know up[ ]set, only call them and that *they would reinstate the checks* because since he, he was getting checks they might stop. I said fine.

(Admin.Tr. 22 (emphasis added).) Thus, the ALJ recognized that Mrs. Valente's testimony was "that she was aware that they were not entitled to the money, *when the husband was working.*" (ALJ Decision at 3 (emphasis added).) Our review of the record has revealed to us no evidence adequate to support a conclusion either that the Valentes were not, or that they believed they were not, entitled to receive benefits when Valente again became unable to work.

█ To summarize, we cannot uphold the ALJ's ruling that Valente was not with-

---

10. The Secretary repeatedly argues that Mrs. Valente testified that she "knew" Valente was not entitled to the checks. (*E.g.,* Secretary's brief on appeal at 7, 11 (three times), 12.) Although Mrs. Valente responded generally affirmatively when the ALJ asked if she "knew" Valente was not entitled to the checks, the record does not support a finding of actual knowledge. Indeed, Mrs. Valente's response to that question indicated that as she did not know what the Act's income eligibility requirements were, she did not know what benefits Valente was supposed to receive:

Q Isn't it true that at that time you knew you weren't [e]ntitl[ ]ed to the checks?

A Yeah I felt really, I felt that there was an error, but then I didn't know, because when I went down there once before they asked me, how much w[ ]ould he make had he been working say the next year. And I had given them ah, ah r[ough] INAUDIBLE don't make it too high you know, so then I said well, he might be making, like if he makes eight thousand, I say[ ]s like nine thousand, say the next year, whatever, right. So I didn't know how they determine what he's suppose[d] to get. (Admin.Tr. 37.)

out fault in retaining the "overpayment" checks because the ALJ (1) did not consider Valente's physical condition and made no effort to determine whether Valente was entitled to benefits for some of the 35 months in question; (2) did not consider a pertinent regulation of the Secretary that may exonerate Valente from fault for the entire 35-month period; and (3) made no finding as to Mrs. Valente's credibility, which was a factor critical to any determination of fault. On remand, the ALJ must consider all of these matters, developing the record fully. If he determines that Valente was not without fault for any or all of the 35 months during which overpayments were received, he must state clearly his rationale for the conclusions he draws so that, if appealed, his decision may be given appropriate judicial review.

### C. *The Equity and Statutory-Purpose Factors*

If, as to any payment properly designated an overpayment, it is determined that Valente was without fault, he will be entitled to a waiver if he can also show either that repayment would defeat the purposes of the Act or that repayment would be against equity and good conscience. Both of these factors require a more careful consideration on remand than the ALJ appears to have given them at the prior hearing.

█ Section 404.508 of the Secretary's regulations states that requiring a refund would defeat the purposes of the Act when it would "deprive a person of income required for ordinary and necessary living expenses." The ALJ's decision presently before us gave no indication of the basis for his conclusion that repayment would not defeat the purposes of the Act. The ALJ observed that Mrs. Valente had about $10,000 in an IRA account. If this was intended either as a finding that $10,000 was available or as a ruling that a repayment of some $20,000 could be made without depriving the Valentes of income needed for ordinary and necessary living expenses, it was inadequate for those pur-

poses. Nor do we view Mrs. Valente's statement that she was "not going to play around with the government," and would "pay the money back" (Admin.Tr. 34), as relieving the ALJ of the obligation to determine whether repayment would deprive the Valentes of money needed for such living expenses. Mrs. Valente's testimony taken as a whole suggested that further inquiry was necessary:

Q Whatever you'd make, you'd lay out a plan INAUDIBLE.

A I would have to.

Q Right and you'd still be able to live and support yourself and your family INAUDIBLE.

A I don't know, well the kind of money, I don't know what the[y']re going to ask for, I can't answer that right now.

Q In terms of, in terms of, how, you would be able to pay some back?

A Let me put it this way, I was diffinitly [*sic*].

Q How much do you think you could pay back, with out, without INAUDIBLE.

A Okay let me put it this way, when my daughter said that she wanted to go to Pace University, I though[t] I was going to die, because I figure w[h]ere is this money going to come from. So I took out a loan and I didn't know how I was going to do it, now what I do is save weekly.

. . . .

Q Okay, now let me ask you this, in other words you would be, you would be able to make some payments INAUDIBLE.

A I would have to, I mean let[']s face it, what am I going to do.

(*Id.* at 34–35.)

█ With respect to the consideration of this question on remand, we note that the administrative record before us indicates that between the time of the hearing and the issuance of the ALJ's opinion, Valente suffered a stroke and had to be hospitalized. We remind the Secretary that a determination that repayment will not deprive

an individual of the funds needed for ordinary and necessary living expenses must be made with reference to the individual's current condition, including whether he is dependent upon all of his current income for such everyday needs. 20 C.F.R. § 404.-508. We also note that at the prior hearing, Mrs. Valente denied knowledge as to Valente's income. We caution the Valentes that although the ALJ has an obligation to inquire, the burden is on the Valentes to respond with evidence from which the appropriate determinations may be made.

Similarly, a more probing examination should be made with respect to the question of equity and good conscience. Section 404.509 of the regulations construes "against equity and good conscience" as requiring that recovery of an overpayment be considered inequitable if the individual, regardless of his financial circumstances, either changed his position for the worse or relinquished a valuable right in reliance on the incorrect payment. The ALJ found that requiring Valente to refund the overpayments would not be against equity and good conscience but, once again, stated no reasons for his conclusion. He did not question Mrs. Valente about any actions her family may have taken in reliance on the continuing payments. As indicated above, however, Mrs. Valente testified that their daughter had entered college; that Mrs. Valente had had to take out a loan to pay tuition—$3800 annually; and that she could meet this expense only by carefully planned saving. The record is not clear whether the daughter started college while the Valentes were receiving overpayments or afterwards; but in either event it may be pertinent that an example to the Secretary's regulations indicates that a benefits recipient who was enabled to send her daughter to college only as a result of overpayments should not, in fairness, be required to make repayment:

> Having entered the daughter in college and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits. In this situation, the recovery of the incorrect payments would be inequitable.

20 C.F.R. § 404.509, Example 2.

## CONCLUSION

The judgment of the district court is vacated, and the case is remanded to the Secretary for further administrative proceedings not inconsistent with this opinion.