920 F.2d 935
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Sally BERNDT, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 89-3609.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 23, 1990.
Decided Dec. 17, 1990.
 
 Before Wood, Jr. and Manion, Circuit Judges, and Eschbach, Senior Circuit Judge.
 
 ORDER
 
 1
 Sally Berndt began receiving Social Security disability payments in 1973. The Social Security Administration (SSA) twice between 1973 and 1983 discontinued her benefits after continuing disability reviews; an Administrative Law Judge reversed both terminations. In November 1983, Berndt began working as a temporary full-time employee at Scott Air Force Base. Berndt informed the SSA that she had returned to work and completed a work report. She remained on her job at Scott until June 1984, when she began to work full-time as an auditor for the Defense Contract Audit Agency.
 
 
 2
 Berndt's disability payments did not end immediately upon her return to work. Social Security regulations allow disability benefits claimants a nine-month trial work period, during which the claimant may work and still receive disability benefits. 20 C.F.R. Sec. 404.1592. In addition, the regulations provide a reentitlement period during which a claimant may work for three months after the trial work period and still receive benefits. 20 C.F.R. Sec. 404.1592a(a). When Berndt informed the SSA she had returned to work, SSA sent her a letter in January 1984 stating that SSA would review her eligibility for benefits in July 1984, when her trial work period was to end. Berndt received this letter and understood its contents.
 
 
 3
 July 1984 came and went but as sometimes happens in bureaucracies, SSA did not get around to reviewing Berndt's eligibility for benefits until April 1985. Berndt continued to receive disability checks in the meantime, and continued to cash those checks. In June 1985, a Social Security representative told Berndt over the telephone that she was being overpaid and that she should not cash any more disability checks she might receive. Despite this admonition, Berndt continued to receive and cash disability checks until December 1985. In January 1986, Berndt finally received written notice from SSA concerning her eligibility for disability payments. SSA's letter stated that her disability had ended in August 1984, and that her last check should have been for October 1984 (owing to the three-month reentitlement period). The letter also informed Berndt that she was obliged to repay the money she had been paid after October 1984.
 
 
 4
 Berndt wrote SSA in March 1986 to ask SSA to waive repayment. 42 U.S.C. Sec. 404(b) provides that SSA shall not recover any payments from "any person who is without fault if such ... recovery would defeat the purpose of [the Social Security Act] or would be against equity or good conscience." SSA found that Berndt was not without fault in accepting the overpayment and that SSA could therefore not waive repayment. An administrative law judge, reviewing the case de novo, reached the same conclusion, and the Social Security Appeals Council declined review. Berndt filed a civil action in the district court against the Secretary of Health and Human Services to review the Appeals Council's decision. See 42 U.S.C. Sec. 405(g). The district court found that substantial evidence supported the Secretary's decision that Berndt was not without fault, and affirmed the Secretary's decision. Berndt filed a timely appeal.
 
 
 5
 As in the district court, the issue we must decide is whether substantial evidence supports the Secretary's decision that Berndt was not without fault in accepting disability payments after October 1986. Valente v. Secretary of Health and Human Services, 733 F.2d 1037, 1041 (2d Cir.1984). In the context of this case, a Social Security beneficiary is not "without fault" in accepting an overpayment if he accepts payments "which he knew or could have been expected to know [were] incorrect." 20 C.F.R. Sec. 404.507(c). To determine whether a person was without fault, the SSA must consider "all pertinent circumstances, including [the recipient's] age, intelligence, education, and physical and mental condition." 20 C.F.R. Sec. 404.507. Moreover, the fact that SSA might have been at fault in making payments does not relieve the recipient from repayment if the recipient is not without fault. Id.
 
 
 6
 Substantial evidence supported the Secretary's decision. Berndt is a college graduate, and is taking courses in pursuit of her master's degree. She held a job requiring a reasonable measure of intelligence and responsibility. Thus, nothing suggests that Berndt was incapable of understanding Social Security regulations. In January 1984, SSA notified her that it would review her eligibility for benefits in July 1984 when her trial work period ended. Berndt stated that she read the letter and understood the trial work period. Still, she never checked her eligibility for benefits. Given Berndt's education, position of responsibility, and understanding of the trial work period, it was not unreasonable for the ALJ to conclude Berndt should have inquired as to her continued eligibility. Berndt has suggested that in the past, when SSA determined her disability had ended, they had immediately stopped her benefits; thus, when SSA continued to send her checks after July 1984, it was reasonable for her to think that perhaps the law had changed to allow her to continue receiving payments. But Berndt herself testified before the ALJ that she "should have checked" on her eligibility, an admission that indicates she had some doubts about her eligibility.
 
 
 7
 Other admissions and actions by Berndt also support the ALJ's conclusion that she was not without fault. Berndt admitted before the ALJ that she knew "Social Security might want theirs back." She also stated twice that she "needed the money:" once, when she was explaining why she did not check with SSA concerning her eligibility (R.25); and another time when responding to the ALJ's comment that he understood the "gist" of her argument. (R.29) (Berndt's attorney suggested at oral argument that her comments about "needing the money" refer only to the time after June 1985, when she received the phone call from the SSA notifying her she was not entitled to continued disability payments. The record does not support this contention.) Finally, Berndt continued to cash checks even after June 1985, when SSA notified her not to cash any more checks. This further buttresses the inference that even before June 1985, lack of notice was not the reason (or at least not the sole reason) Berndt failed to inquire about her eligibility for benefits and continued to cash her disability checks.
 
 
 8
 In sum, the evidence before the ALJ was such that "a reasonable mind might accept [it] as adequate to support [the] conclusion" that Berndt was not without fault. See Richardson v. Perales, 402 U.S. 389, 401 (1971). In other words, substantial evidence supported the Secretary's conclusion. Therefore, we affirm the district court.
 
 
 9
 AFFIRMED.