**Leah KAPLAN, ESTATE Representative OF Albert KAPLAN, Plaintiff,**

v.

**Michael LEAVITT, Secretary of the United States Department of Health and Human Services, Defendant.**

**No. 06 CIV. 5511(DC).**

United States District Court,
S.D. New York.

Sept. 7, 2007.

---

Medicare Rights Center by Robert M. Hayes, Esq., and Manatt, Phelps & Phillips, LLP by Ronald Gustav Blum, Esq., New York, NY, Attorneys for Plaintiff.

Michael J. Garcia, Esq., United States Attorney for the Southern District of New York by Allison D. Penn, Esq., Assistant United States Attorney, New York, NY, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Leah Kaplan, estate representative of Albert Kaplan, brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1395ff(b), challenging the final determination of defendant Secretary of Health and Human Services (the "Secretary" and "HHS," respectively) that Kaplan was not entitled to certain Medicare benefits under Title XVIII of the Social Security Act (the "Act"). Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, plaintiff's motion is denied and the Secretary's motion is granted. The Secretary's determination denying benefits is affirmed, and the complaint is dismissed.

## BACKGROUND

### A. Facts

Plaintiff seeks judicial review of the Secretary's decision finding that she is not entitled to reimbursement from Medicare for the cost of transporting her late husband, Albert Kaplan ("Kaplan"), by air ambulance from the Miami Heart Institute ("MHI") in Miami, Florida, to St. Luke's–Roosevelt Hospital ("St. Luke's") in New York, New York in June 2002. In 2002, Kaplan and plaintiff maintained a residence in Hollywood, Florida. (AR313).[1] Prior to their move to Florida, Kaplan received medical treatment in New York under the care of Dr. Jonathan Sackner–Bernstein at St. Luke's for severe end-state congestive heart failure, coronary artery disease, diabetes, and gout. (AR314–15).

While Kaplan was in Florida in May 2002, he suffered from profound diarrhea, dehydration, and renal failure as a result of an overdose of gout medication. (AR315–16). From May 17, 2002 to June 4, 2002, Kaplan was hospitalized at MHI, where he was under the care of Dr. Jay Levine, a cardiologist. Dr. Levine determined that Kaplan required a biventricular pacemaker "that could only be done at St. Luke's Hospital in New York" and "was not available in the Miami community." (AR257). But, in a letter dated August 9,

---

1. Citations to "AR——" refer to the Certified Administrative Record filed with the Court on November 28, 2006.

2004, Dr. Sackner–Bernstein indicated that at least one other hospital in Miami—although not as distinguished as St. Luke's—was also able to perform the necessary procedure:

> The first thought would be to consider a Heart Failure Center in the southern part of Florida. Those who are aware of these centers know of the fine performance in cardiac transplant and clinical trials by the team at Jackson Memorial Hospital/University of Miami. However, this is not a center that has focused its efforts on establishing a center of excellence for heart failure management. In addition, it is not a center that had established itself as being at the leading edge of biventricular pacemaker implantation by that period of time.

(AR45). In light of Kaplan's numerous medical issues and advanced age of seventy-eight, as well as St. Luke's reputation as a premier institution for heart failure management and familiarity with Kaplan's medical history, Drs. Levine and Sackner–Bernstein decided that Kaplan should be airlifted from MHI to St. Luke's. (AR45, 317).

Before transporting Kaplan by air ambulance, Metrocare Ambulance Group ("Metrocare") required plaintiff to pay in advance for the service. After Metrocare also informed plaintiff that Medicare would reimburse her, plaintiff tendered full payment.

On June 5, 2002, Kaplan was transferred to New York City by air ambulance and was admitted at St. Luke's. (AR45). Before a pacemaker could be implanted, however, Kaplan developed a systemic infection and died at the hospital on June 11, 2002. (AR320–21).

## B. *Medicare Carrier Proceedings*

In May 2003, plaintiff submitted a claim to Empire Medicare Services ("Empire"), a Medicare Part B carrier, for payment of $8,272.00, the cost of transporting Kaplan by air ambulance from MHI to St. Luke's in June 2002. (AR301). Empire denied plaintiff's claim, and plaintiff sought review of the decision from Empire in July 2003. As part of its review, Empire requested an evaluation of plaintiff's claim from the Director of its Medical Review Department, cardiologist Norbert Rainford, who determined that "[t]he only possible procedures [Kaplan required were] a biventricular pacemaker for CHF or an IOD implant—both of which are available in Florida." (AR249). On the basis of Dr. Rainford's determination, Empire affirmed the denial in October 2003. (AR247, 249). Plaintiff sought a second review, which Empire, again, denied in May 2004. (AR280).

In July 2004, plaintiff, through counsel, requested a hearing before an Empire hearing officer, and a hearing was conducted on October 18, 2004. (AR133). Hearing Officer Louise Marcus issued a decision affirming the previous denials on the ground that "there were closer facilities that could have provided the level of care required to treat Mr. Kaplan." (AR273, 270–77).

## C. *The ALJ Hearing*

Plaintiff appealed the hearing officer's decision, and a hearing was held on September 6, 2005 before Administrative Law Judge ("ALJ") Wallace Tannenbaum of the Office of Hearings and Appeals of the Social Security Administration. (AR310). Two representatives from the Medicare Rights Center participated on behalf of plaintiff.

In a decision dated September 22, 2005, ALJ Tannenbaum rejected plaintiff's claim, finding that "St. Luke's Hos-

pital in New York, New York was not the nearest appropriate hospital ... to which the Beneficiary could have been transported," as required by 42 C.F.R. § 410.40(e)(1). (AR30). On November 17, 2005, plaintiff requested review of the ALJ's decision by the Medicare Appeals Council, which declined review, stating that the ALJ's decision constituted the Secretary's final determination. (AR5–6). Plaintiff commenced this suit on July 21, 2006.

## DISCUSSION

### A. *Applicable Law*

#### 1. *Standard of Review*

■■■ Under the Medicare provisions of the Act, "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g), incorporated into 42 U.S.C. § 1395ff(b). Substantial evidence means "more than a mere scintilla"—it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). If substantial evidence supports the Secretary's decision, "the decision must be upheld, even if there is also substantial evidence for the plaintiff's position." *See Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982). A district court's review of the Secretary's determination is therefore limited to "whether the [Secretary] applied the proper legal standards, whether its factual findings were supported by substantial evidence, and whether [he] provided a full and fair hearing." *Saul v. Apfel*, No. 97 Civ. 1616(DC), 1998 WL 329275, at *3 (S.D.N.Y. June 22, 1998).

■■■ The Secretary's decision is to be afforded considerable deference; the reviewing court should not "substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

#### 2. *Ambulance Coverage under Medicare Part B*

Medicare is the federal medical insurance program for the aged and disabled. Part B of the Medicare program is a voluntary supplemental insurance program covering certain outpatient services, including ambulance services. *See* Act, XVIII, 42 U.S.C. §§ 1395–1395ggg. The Act provides that Medicare will insure a beneficiary for ambulance services "where the use of other methods of transportation is contraindicated by the individual's condition, but ... only to the extent provided in regulations." 42 U.S.C. § 1395x(s)(7).

Regulations governing coverage of ambulance services require that "the service meets the medical necessity and origin and destination requirements of paragraphs (d) and (e) of this section." 42 C.F.R. § 410.40(a)(1). At issue in the present case is the origin and destination provision, which states that Medicare Part B covers ambulance transportation "[f]rom any point of origin to the nearest hospital ... that is capable of furnishing the required level and type of care for the beneficiary's illness or injury." 42 C.F.R. § 410.40(e)(1).

The Medicare Benefit Policy Manual (the "Manual"), issued by the Centers for Medicare and Medicaid Services ("CMS") as an interpretive guide to the Medicare statute and regulations, further explains

the origin and destination requirement.[2] To receive coverage for air ambulance transportation services, "[i]t is required that the beneficiary be transported to the nearest hospital with appropriate facilities for treatment." Manual § 2120.4(A). The Manual provides the following definition of "appropriate facilities":

> The term "appropriate facilities" refers to units or components of a hospital that are capable of providing the required level and type of care for the patient's illness and that have available the type of physician or physician specialist needed to treat the beneficiary's condition.... The fact that a more distant hospital is better equipped does not in and of itself warrant a finding that a closer hospital does not have appropriate facilities. Such a finding is warranted, however, if the beneficiary's condition requires a higher level of trauma care or other specialized service available only at the more distant hospital.

Manual § 2120.4(D).

## B. *Application*

### 1. *The Treating–Physician Rule*

■ Plaintiff argues that the ALJ should have deferred to the opinions of treating physicians, Drs. Levine and Sackner–Bernstein, that Kaplan required treatment at St. Luke's, and that failure to apply the "treating physician rule" was legal error. As a threshold matter, however, it is not clear that this rule applies to Medicare determinations.

The treating physician rule was originally a judge-made rule that gave substantial weight to the opinions of treating physicians in disability benefit claims proceedings. *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir.1993). In 1991, however, the Secretary issued "Standards for Consultative Examinations and Existing Medical Evidence," 56 Fed.Reg. 36,932 (1991), which modified the treating physician rule by according less deference to unsupported treating physician's opinions. In *Schisler v. Sullivan*, the Second Circuit upheld the regulation, thereby overruling the Circuit's prior version of the rule.

The codified version of the treating physician rule does not by its terms apply to Medicare cases. Even before promulgation of the regulation, the Second Circuit "repeatedly declined to decide whether its judicially-crafted Social Security rule applied in the Medicare context." *Keefe v. Shalala*, 71 F.3d 1060, 1064 (2d Cir.1995); *see, e.g., State of New York v. Secretary of HHS*, 924 F.2d 431, 433–34 (2d Cir.1991). After codification, the Second Circuit has only suggested in dicta that it is "more than possible that some version of the treating physician rule could well apply in Medicare cases." *Keefe v. Shalala*, 71 F.3d at 1064, *quoting State of New York ex rel. Holland v. Sullivan*, 927 F.2d 57, 60 (2d Cir.1991) (leaving the issue for the Secretary's initial consideration and suggesting that some version of the rule should apply). Although the Western District of New York found "no prohibition against the applicability of the treating physician rule to Medicare cases," *Klementowski v. Secretary of Dep't of HHS*, 801 F.Supp. 1022, 1025–26 (W.D.N.Y.1992), no other case has held that the treating physician rule applies in the Medicare context.

Plaintiff argues that this Court should hold that the treating physician rule ap-

---

**2.** At the time of the events in this case, the paper version of the Manual was in effect. The relevant provisions are set forth in Manual § 2120.4, which are quoted in the ALJ's decision. (AR104–06). In October 2003, CMS transferred the Manual to a web-based system, called the online CMS Manual System, which is located at http://www.cms.hhs.gov/manuals. The relevant provisions are set forth in § 10.3.

plies in Medicare coverage determinations. I need not address the issue, however, to decide this case. Even assuming the rule applies in the Medicare context, Kaplan's doctors did not opine that there was no hospital closer to Miami than St. Luke's appropriate for the treatment of Kaplan's condition. Rather, Dr. Levine explained that Kaplan "was transferred to the St. Luke's/Roosevelt Hospital because it was a leading center in the field of biventricular pacing." (AR48). Similarly, Dr. Sackner–Bernstein described St. Luke's as a hospital with "a level of performance at the highest level" and "established as a leading center in the field of biventricular pacing." (AR45–46). More tellingly, he acknowledged that Kaplan "would have had opportunities to be sent by an air ambulance to hospitals stretching from Atlanta to the Mayo Clinic as well as further west, but none of these hospitals ... could report ... the same level of expertise" as St. Luke's. (AR46).

Hence, although Drs. Levine and Sackner–Bernstein believed that St. Luke's would have offered Kaplan the highest level of care and expertise for his pacemaker implantation procedure, the regulations do not require the highest level of care and expertise. Medicare Part B does not cover ambulance transfers to the best facility, or even to the most appropriate facility available, but only to the "nearest appropriate hospital." The Medicare Benefit Policy Manual is clear that "[t]he fact that a more distant hospital is better equipped does not in and of itself warrant a finding that a closer hospital does not have appropriate facilities." Manual § 2120.4(D). The opinions of Kaplan's treating physicians that St. Luke's is superior to other hospitals, therefore, is not controlling. *See Murphy v. Secretary of HHS*, 62 F.Supp.2d 1104, 1106 (S.D.N.Y.1999).

### 2. Substantial Evidence for Secretary's Denial of Payment

 Although the "claimant ... has the burden of proving entitlement to Medicare benefits," *Friedman v. Secretary of Dep't of HHS*, 819 F.2d 42, 45 (2d Cir. 1987), the Secretary's denial of Medicare payments must still be supported by substantial evidence. In concluding that St. Luke's was not the nearest hospital with appropriate facilities to which Kaplan could be transferred, ALJ Tannenbaum relied on the evaluation of Empire's Medical Director, Dr. Norbert Rainford, who determined that surgery for a biventricular pacemaker insertion was available in Florida. (AR249). The ALJ also referred to Dr. Sackner–Bernstein's letter indicating that Jackson Memorial Hospital in Miami, Florida also performed cardiac transplants, although its reputation as a leading center for heart failure management was not on par with that of St. Luke's. The ALJ concluded from the letter that "it was Dr. Sackner–Bernstein's opinion that St. Luke's Hospital in New York was qualitatively better than Jackson Memorial Hospital/University [of] Miami, [but] Jackson Memorial Hospital/University [of Miami] was capable of furnishing the required level and type of care for the Beneficiary's cardio-vascular illness." (A31). Accordingly, Tannenbaum found that St. Luke's was not the "nearest appropriate hospital" and affirmed Empire's denial of coverage. (AR35).

Plaintiff argues that Kaplan's numerous medical issues and complications required a facility with not only the capability to perform the biventricular pacing procedure, but also the ability to manage his short-term and long-term care. But Dr. Sackner–Bernstein's letter does not suggest that a closer hospital than St. Luke's, such as Jackson Memorial Hospital, could not provide appropriate heart failure man-

agement; his letter indicates only that Jackson Memorial Hospital was not as dedicated to "establishing a center of excellence" as St. Luke's. Indeed, it is difficult to accept plaintiff's contention that a hospital that could perform a biventricular pacemaker insertion could not also provide requisite care and management of the patient.

After reviewing the record, I conclude that substantial evidence exists in the record to support the ALJ's conclusion that St. Luke's was not the nearest appropriate hospital.

### 3. *Limitation of Liability Claim*

■ In the alternative, plaintiff asserts that she is entitled to Medicare payment under the limitation on liability provision of 42 U.S.C. § 1395pp. This section requires the Secretary to reimburse for services if (1) coverage is denied "by reason of section 1395y(a)(1) or (9)" or by section 1395pp(g), and (2) the beneficiary and the medical service provider "did not know, and could not reasonably have been expected to know, that payment would not be made." § 1395pp(a).

Here, plaintiff argues that the two elements of the limitation on liability provision are met. First, she claims that the ALJ's decision denying coverage was based on § 1395y(a)(1)(A), i.e., the air ambulance service was "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." But the ALJ's decision clearly states that both the hearing officer and the ALJ "found that the air ambulance transportation services furnished to the Beneficiary in this case meet the medical necessity requirements of CMS regulation 42 C.F.R. § 410.40(d)." (AR35). Coverage was denied because the ambulance service did not meet the " 'nearest appropriate hospital'

element of the origin and destination requirement of CMS regulation 42 C.F.R. § 410.40(e)." *Id.* Plaintiff argues—notwithstanding the ALJ's description of the grounds of denial—that the substance of the denial was based on lack of medical necessity. This argument is unpersuasive because the ALJ's decision only discusses the availability of other hospitals closer to Miami than St. Luke's, and does not contend that a biventricular pacemaker implantation and heart failure management were medically necessary.

The remaining sections listed in § 1395pp(a)(1) that also trigger the limitation on liability provision are not at issue in this case, and so plaintiff's argument that she is entitled to Medicare payment under 42 U.S.C. § 1395pp fails.

In any event, plaintiff also fails to meet the second prong of the limitation on liability provision. She states that she did not know that the air ambulance service would not be covered under Medicare at the time Metrocare provided the service. But without further showing that Metrocare also did not know that payment would not be made, plaintiff does not satisfy § 1395pp(a)(2). Accordingly, plaintiff cannot claim reimbursement under 42 U.S.C. § 1395pp.

### CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is granted, and the final determination of the Secretary is affirmed. The complaint is dismissed, without costs. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.