**Myrtle M. FRASIER, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 79–C–1694.**

United States District Court,
D. Colorado.

Aug. 19, 1980.

---

Paul H. Cragan, Cragan & Nichols, P. C., Loveland, Colo., for plaintiff.

Roland J. Brumbaugh, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

This matter is before the Court upon the defendant's, Secretary of Health and Human Services (Secretary's) motion to affirm her administrative decision. In that decision, the Secretary terminated the plaintiff's (Myrtle Frasier's) disability insurance benefits and ordered recovery of an alleged overpayment of benefits totalling $2,648.40.

In June, 1974, Frasier applied for and was granted disability insurance benefits for back injuries and pain. From February to November of 1976, she operated a taxicab company. In her own words, the plaintiff described her job responsibilities as "dispatcher, manager, bookkeeper and flunkie." After selling the company, she returned to work there in November, 1977 as a dispatcher. Although she had no fixed hours, she worked approximately five to eight hours five days per week. Throughout the course of Frasier's employment, her employer allowed her to lie down and move around on the job to ease her discomfort. Frasier ended her job as a dispatcher in September, 1978.

The plaintiff, in August, 1978, received a letter from the Bureau of Disability Insurance advising her that her disability period had expired in November, 1977 and that her January, 1978 check was the last one to which she had been entitled. Her disability benefits actually were cut off in January, 1979.

In seeking judicial review of the administrative decision in this case, Frasier asks for reinstatement of benefits with retroactive payment of benefits withheld or, alternatively, for waiver of repayment of excessive benefits paid to her.

■ A court, in reviewing the Secretary's findings of fact, must determine whether they are supported by substantial evidence. 42 U.S.C. Section 405(g); *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence [is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . ." *Gardner v. Bishop*, 362 F.2d 917, 919 (10th Cir. 1966). More specifically, the substantial evidence test requires the court to find that the Secretary's findings are buttressed "by more than a scintilla of evidence, although less than a preponderance of evidence." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Even if the evidence would permit a different conclusion, a court is required to accept the Secretary's findings so long as they are supported by substantial evidence. *Id.*

1. *The Termination of Benefits Issue.*

For purposes of the Social Security Act, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Section 423(d)(1)(A). A person may be found disabled "only if his physical or mental impairment or impairments are of such severity that he . . . cannot engage in any . . . kind of substantial gainful work which exists in the national economy." 42 U.S.C. Section 423(d)(2)(A).

A recipient of disability insurance benefits is entitled to a nine-month trial work period during which disability benefits may not be terminated. 20 C.F.R. Section 404.-1536(a) (1979). However, the person's performance during that trial period may be considered in determining whether the disability ceased at any time after the expiration of nine months. *Id.*

If a person is capable of performing significant duties even on a part-time basis, such performance tends to demonstrate "an ability to engage in substantial gainful ac-

tivity." 20 C.F.R. Section 404.1533 (1979). Although actual job performance may reveal an inability to engage in substantial gainful activity,[1] the record shows that Frasier's job performance demonstrated just the opposite. Testimony was received indicating that the plaintiff's work hours were influenced not by her impairment but by her employer's needs. Moreover, Frasier herself stated that she quit the dispatcher position "because of the job pressure"—not because of a disabling impairment.

■ The plaintiff argues that her earnings of $160 per month as a dispatcher should be presumed to demonstrate that she was not engaged in a substantial gainful activity. Social Security rules provide that earnings of less than $160 per month in 1977 and $170 per month in 1978 ordinarily will show that a person has not engaged in a substantial gainful activity—assuming there is no evidence of ability to perform such activity. 20 C.F.R. Section 404.-1534(b)(2) (1979). Frasier's earnings of $40 per week as a dispatcher translate into about $168 per month—below the ordinary standard for substantial gainful activity in 1978. However, her ability to perform the work of an unimpaired dispatcher coupled with her reasons for leaving the job furnish substantial evidence to support the conclusion below that she was able to engage in a substantial gainful activity.

2. *The Overpayment Issue.*

Recovery of overpayments may be waived if the recipient "is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience." 42 U.S.C. Section 404(b).

"Fault" constitutes: "(a) [a]n incorrect statement made by the individual which he knew or should have known to be incorrect, or (b) [f]ailure to furnish information which he knew or should have known to be material; or (c) . . . acceptance of a payment which he either knew or should have been expected to know was incorrect." 20 C.F.R. Section 404.507 (1979).

1. 20 C.F.R. Section 404.1534(b).

The record in this case shows that the plaintiff was forthright and accurate in statements she made and information she furnished to the Social Security Office. The question of fault thus hinges upon whether Frasier accepted payments which she knew or should have known were excessive.

Although the Secretary has determined that the plaintiff was at fault in accepting overpayments, the record provides no substantial evidence for that conclusion. Not until August, 1978 did Social Security notify Frasier that she had been ineligible for benefits since January, 1978. Until she received that belated notice, Frasier hardly could have known or been expected to know that she was receiving excessive payments.

■ The government argues that Frasier's awareness of the trial work period should have been sufficient notice that her eligibility had expired after nine months of work. Under the trial work period rule, however, eligibility does not necessarily expire automatically at the end of nine months. Since performance of work *may* demonstrate an ability to engage in substantial gainful activity,[2] the mere passage of a nine-month trial period, without an administrative determination of the plaintiff's capacity to engage in substantial gainful activity, should not suffice to remove a person's disability status. Absent such a determination after the nine months, Frasier had no reason to believe that she was no longer eligible for disability benefits.

" 'Against equity and good conscience' means that adjustment or recovery of an incorrect payment . . . will be considered inequitable if an individual . . . changed his position for the worse." 20 C.F.R. Section 404.509 (1979). When Frasier unknowingly became indebted for $2,648.40, "her position changed suddenly for the worse." *Woods v. Gardner*, 286 F.Supp. 648, 652 (W.D.Pa.1968). The record in this case contains no evidence contradicting a change in Frasier's position for the worse. Although the Secretary determined that the plaintiff had nearly $4,000 in savings from which the overpayment could be recovered, repayment from Frasier's savings account would leave her only slightly more than $1,000 to meet ordinary and necessary living expenses and provide for emergency needs. Given her normal basic expenses of about $315 per month, and her unemployed status, Frasier would be destitute within three to four months if obligated to repay the excess benefits she received through no fault of her own.

Absent substantial evidence that the plaintiff was at fault in receiving overpayments and that repayment would not violate equity and good conscience, the Secretary's refusal to waive recovery of excess payments should be reversed.

### ORDER

IT IS ORDERED that the Secretary's decision to terminate the plaintiff's disability insurance benefits is affirmed, but that the determination not to waive recovery of overpayments is reversed.

---

**2.** 20 C.F.R. Section 404.1532(a).