Roger E. **DORMAN**, Plaintiff–Appellant,

v.

Patricia R. **HARRIS**, Secretary of Health and Human Services, Defendant–Appellee.

No. 262, Docket 80–6108.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1980.

Decided Oct. 15, 1980.

Peter D. Braun, Neighborhood Legal Services, Buffalo, N. Y., for plaintiff–appellant.

Richard J. Arcara, U. S. Atty. for the Western District of New York, Buffalo, N. Y. (Jack S. Penca, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for defendant–appellee.

Before KAUFMAN and TIMBERS, Circuit Judges, NICKERSON, District Judge.[*]

IRVING R. KAUFMAN, Circuit Judge:

Fundamental tenets of administrative law and sound judicial administration require that courts show some measure of deference to an agency's findings of fact. Evaluations of witnesses' credibility and complex information are best performed by those who preside over the hearings or have special expertise in the particular subject matter.

Accordingly, judicial review is limited to determining whether an administrative decision is supported by "substantial evidence." [1] Because the hearing conducted by an Administrative Law Judge in this case was both improper and incomplete, we are unable to state that the Secretary of Health and Human Services proved by "substantial evidence" that appellant Roger Dorman was not "without fault" in accept-

---

[*] Of the Eastern District of New York, sitting by designation.

[1] *See, e. g.,* 42 U.S.C. § 405(g) (1976); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (deference to the findings of the Secretary of Health and Human Services); 29 U.S.C. § 160(e) (1976); *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–64, 95 L.Ed. 456 (1951) (findings by the National Labor Relations Board).

ing overpayments of social security disability benefits. Therefore, we must reverse the order of summary judgment granted by Judge Elfvin and remand to the Secretary for additional fact–finding.

## I.

### A.

Roger Dorman, born in 1927, was employed as a pipefitter and mechanic in Buffalo–area factories until a severe heart condition forced him in September 1966 to retire and apply for disability and disability insurance benefits. The application was granted, and the Secretary of Health, Education, and Welfare (now Health and Human Services) determined that Dorman was entitled to benefits commencing May 8, 1966. In 1972, the Social Security Administration (SSA) reevaluated Dorman's situation and concluded that he remained eligible for disability benefits.

Dorman returned to work in February 1975 under the auspices of the CETA program (Comprehensive Employment and Training Act, 29 U.S.C. §§ 801–992 (1976)). He was employed as a "management analyst" for the City of Buffalo, evaluating the efficiency of the police and fire departments. Dorman claims that on approximately March 10, 1975, he mailed a "brown and tan" card to the SSA reporting his new employment. The SSA, however, states that it has no record of this communication. Dorman continued to receive and endorse benefits checks while working, since he assumed (correctly) that the Secretary's Regulations grant a nine month trial work period to a formerly disabled person, during which time eligibility for benefits continues. 20 C.F.R. § 404.1536 (1980).

The SSA learned of Dorman's employment in late December, 1975, when it discovered that his earnings had been reported for his Social Security records. A job questionnaire was then sent to Dorman, who returned it in mid–February, six weeks later. Dorman states that, before returning the questionnaire, he visited the SSA office in Buffalo on January 3 or 4, 1976. This was prompted by his receipt of the December 1975 check in early January, his tenth monthly check after starting his CETA job. He sought advice from the SSA about the propriety of cashing the check. Dorman notes he was told during this occasion, and on a subsequent visit in April, 1976, that if he did not hear anything from the SSA Headquarters in Baltimore, he could continue to endorse the benefits payments. The SSA's silence, he was purportedly told, indicated that no determination had been made that his status as a "disabled" person had changed. During the April visit, an employee named Shaw purportedly spoke with Dorman.

In any event, the SSA continued to send disability checks to Dorman through June 1976. On June 16, 1976, however, the SSA determined that the nine month trial work period had ended in November 1975. It notified Dorman that his last month of entitlement to benefits was January 1976, the second full month after the nine month period ended. Dorman was informed of this determination on July 19, 1976, and was told that benefits for 5 months–from February through June 1976, amounting to $1383.50–were overpayments, and that arrangements should be made for their repayment.

### B.

Dorman completed a refund questionnaire and a "without fault" questionnaire on October 28, 1976, stating that: "I came right to this office in February with my check and was told that they determined me not capable." (Presumably, Dorman meant that SSA employees informed him that he was still "disabled" for purposes of receiving disability benefits). A statement by the Buffalo district office, also filed on that date, noted that the "claimant appeared very truthful and worried about his situation ... There have been scheduled office visits ... he did appear without fault." Dorman's request for a waiver of the overpayment was denied on January 27, 1977. He applied twice for reconsideration–on March 28, 1977 and on August 10,

1977. On September 22, 1977, the SSA issued a Notice of Reconsideration, informing Dorman that its original decision not to waive the overpayment was correct.

During this period, Dorman's health had deteriorated to a point where he was forced to leave his employment in December 1976. His reapplication for disability benefits, filed on December 29, 1976, was granted on January 24, 1977. Dorman was informed, however, that because of the overpayments he had received the previous year, he would not receive any benefits until June 1977. From January to June 1977, therefore, Dorman received nothing from the SSA, and survived on $106.00 per month from the Veterans Administration. Dorman was forced to file for bankruptcy in December 1977.[2]

### C.

Dorman requested an administrative hearing on October 6, 1977, to review the reconsideration determination. A *de novo* hearing was conducted by an Administrative Law Judge (ALJ) on January 9, 1978. Dorman appeared without counsel and testified he had notified the SSA on "approximately March 10, 1975" of his employment. He described his account of the events of early 1976–his receipt of the tenth monthly check (for December) in early January, his visit to the SSA and conversations with its employees at that time, his endorsement of the December, January, and February checks, and his subsequent visit to the SSA and conversations with Mr. Shaw in April 1976 after receiving the March 1976 check. Dorman noted that Shaw would be able to identify the person who interviewed him in January. He also stated that the last check he endorsed was for May 1976; the June check, he insisted, was never received. The ALJ did not call any SSA employees to give testimony relating to Dorman's visits.

The ALJ's decision on June 12, 1978, concluded that Dorman was not "without fault" in receiving the 1976 overpayments, 42 U.S.C. § 404(b) (1976), and therefore a waiver would not be granted. The Administrative Law Judge viewed Dorman's background and education–Dorman had college degrees in business administration and marketing–as proof that he was a "competent and intelligent individual." The Judge found no evidence in the record that Dorman notified the SSA of his CETA employment in March 1975. He also found that, even if such notice were given, Dorman's failure to pursue the matter until January 1976 was evidence of a lack of good faith, as was Dorman's six week delay in returning the job questionnaire received in late December 1975. Finally, the ALJ stated that he conducted an independent search for the June 1976 check and, having located it, found Dorman's signature on it. Since Dorman claimed at the hearing that he never received the check, this evidence significantly impeached his credibility.

Dorman requested a review of the ALJ's decision, noting that the June 1976 check was examined *ex parte* by the Judge and was not presented at the hearing for handwriting comparison. He also claimed that upon filing for a hearing, he requested Mr. Shaw and another SSA employee to be present. The Appeals Council of HEW rejected Dorman's claims, and approved the ALJ's decision on September 11, 1978. Dorman then commenced an action in the Western District of New York, and on April 21, 1980, Judge Elfvin granted summary judgment for the Secretary, holding that the ALJ was capable of evaluating Dorman's credibility and that his finding that Dorman was not "without fault" was supported by "substantial evidence." This appeal followed.

---

**2.** In *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) the Supreme Court held that where a claimant's "fault" in receiving overpayments is in issue, 42 U.S.C. § 404(b) (1976), recoupment must be preceded by a hearing, since findings of "fault" require credibility evaluations which can only be prop-

erly considered at an oral hearing. Thus, if the SSA had recovered Dorman's overpayments following the date of the *Yamasaki* decision, its failure to hold an oral hearing prior to recoupment would have violated the Social Security Act.

## II.

Against this background of the facts, we approach the law. The Social Security Act states that the Secretary of HEW shall not recover overpayment from "any person who is without fault if such adjustment or recovery would defeat the purpose of [the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b) (1976). "Fault" is defined in the Secretary's Regulations as follows:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507 (1980). Using these standards the ALJ concluded that Dorman was not "without fault."

The conduct for which Dorman allegedly is at fault involves two specific instances: 1) his failure to notify the SSA of his CETA employment in February or March 1975, or alternatively, if he did mail a "brown and tan" card to the SSA at that time, his failure to pursue the matter for nine months, and 2) his six week delay in returning the job questionnaire sent to him by the SSA on December 30, 1975.

### A.

Since the SSA did not have any record of the "brown and tan" card, the ALJ was required to evaluate Dorman's credibility to determine whether he took reasonable actions in March 1975 to inform the SSA of his new employment. The Judge, however, based his credibility determination on an *ex parte* examination of the June 1976 check, which Dorman claimed he never received. Finding Dorman's "signature" on

the check, he concluded that Dorman withheld material information from the SSA, and therefore was not "without fault" in accepting the overpayments.

This post–hearing examination of the check was highly improper since Dorman was never given the opportunity to confront this evidence. In fact, Dorman claims that he no longer lived at the address stated on the June 1976 check when it was mailed in early July of that year, and that someone else must have forged his signature.

We are of the view that when additional evidence became available, such as this check, the ALJ should have reopened the hearing for its consideration. 20 C.F.R. § 404.927 (1980). The Secretary's decision must be based upon evidence adduced *at* the hearing. 42 U.S.C. § 405(b) (1976); *Gullo v. Califano*, 609 F.2d 649 (2d Cir. 1979) (per curiam).[3] The ALJ's determination of Dorman's credibility was so tainted by this improper *ex parte* evaluation of the June 1976 check that his conclusion that Dorman was "at fault" for either fabricating the story about the "brown and tan" card or failing to follow up the matter with the SSA is severely undermined. In addition, Dorman raised his objection to this *ex parte* procedure at the earliest possible moment— in his request to the Appeals Council for review of the hearing decision order. He reiterated this objection in his affidavit supporting his unsuccessful cross–motion for summary judgment before Judge Elfvin.

Once we discount the ALJ's tainted evaluation of Dorman we find that Dorman's failure to contact the SSA for nine months might be viewed in a different light. Dorman reasonably and correctly assumed that his benefits would continue for nine months. By contacting the SSA after receiving the tenth check, Dorman indicated good faith. If the evidence of the June 1976 check were to be excluded, we believe

---

**3.** The ALJ's failure to afford Dorman an opportunity to confront this evidence may have violated Dorman's due process rights, *cf. Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). We need not address this constitutional issue, however, because a statutory resolution of the dispute is determinative. *See Califano v. Yamasaki*, 442 U.S. 682, 692–93, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979).

the ALJ could not have concluded that "more than a mere scintilla" of evidence existed to show that Dorman was at fault. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

**B.**

The second set of circumstances–Dorman's six week delay in returning the job questionnaire in early 1976–also fails to provide "substantial evidence" of fault. Three sources of information were relevant in evaluating the events of this period: 1) Dorman's testimony that he visited the SSA on January 3 or 4, 1976, several days after the job questionnaire was mailed to him, to discuss the problems with the 10th check, as well as his testimony of a visit in April; 2) an account of these visits by the SSA employees who interviewed Dorman; and 3) the district office evaluation of Dorman's October 28, 1976 "without fault" application stating that he appeared "very truthful and worried" and "without fault."

The ALJ was in error in evaluating Dorman's testimony concerning these events, because the improperly–obtained evidence of the June 1976 check undoubtedly tainted his general credibility determination. If Dorman had been permitted at the hearing to present evidence that he did not sign the check, which he claims, it is reasonable to suppose that his account, as well as the October 28 district office report, would have been given more weight by the ALJ and might have tilted the scale in his favor.

■ Moreover, Dorman's appearance at the hearing without counsel created a duty for the ALJ "to scrupulously and conscientiously probe into, inquire of and explore for all the relevant facts...." *Gold v. Secretary of H. E. W.*, 463 F.2d 38, 43 (2d Cir. 1972). The ALJ neglected this duty in two crucial respects. First, he failed to elicit testimony from Dorman about his reasons for the six–week delay, save for asking Dorman at the end of the hearing in a most general manner whether Dorman had anything else to add. Dorman states on this appeal, that if specifically asked about the reasons for the delay, he would have in-

formed the ALJ of his January visit to the district office and of a subsequent hospitalization which prevented his prompt completion of the form. We cannot evaluate the truthfulness of these assertions, of course, but note that these facts should have been developed in the record, especially where the claimant appeared *pro se*. *See Gold, supra.*

In addition, the ALJ failed to obtain the testimony of Mr. Shaw and the other SSA employee who spoke to Dorman in January 1976 about his overpayments. Their testimony is crucial, for if Dorman relied on their erroneous recommendations, he was not at fault in accepting the overpayments. 20 C.F.R. § 404.510a (1980). The absence of their testimony–testimony which is "necessary to a just determination;" *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)–weakens the bases for the ALJ's legal and factual conclusions.

We conclude that additional facts are required to determine whether Dorman was "without fault." Therefore, a remand is appropriate to consider relevant, probative, and available evidence that was not explicitly weighed by the Secretary. *Id.; see also Parker v. Harris*, 626 F.2d 225, 234–35 (2d Cir. 1980). The ALJ should be prepared to hear testimony by Dorman and handwriting experts regarding the signature appearing on the June 19, 1976 check, as well as testimony by Dorman and SSA employees concerning the events of early 1976, particularly Dorman's six week delay in returning the job questionnaire.

■ Because the Secretary's findings were not supported by "substantial evidence," Judge Elfvin's order granting summary judgment for the Secretary is incorrect as a matter of law, *Milton v. Harris*, 616 F.2d 968, 975 (7th Cir. 1980); *see also* 6 Moore's Federal Practice ¶ 56.17[3] at 56–694 & nn. 6–8 (2d ed. 1980). Accordingly, we reverse and remand to the Secretary for proceedings consistent with this opinion.