Joseph A. TORRE, Plaintiff,

v.

Otis R. BOWEN, M.D., as Secretary of Health & Human Services of the United States of America, Defendant.

No. CV–85–3297.

United States District Court, E.D. New York.

Nov. 24, 1987.

Goldstein & Zucker, New York City, for plaintiff.

Charles Knapp, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This action is brought pursuant to §§ 1631(c)(3) and 205(g) of the Social Security Act, as amended, 42 U.S.C. §§ 1383(c)(3) and 405(g), to review a final determination of the Secretary of Health and Human Services denying plaintiff's request for a waiver of recovery of an overpayment of disability insurance payments. Both parties have moved for judgment on the pleadings.

*Background*

Plaintiff was found disabled as of March 20, 1974, due to a myocardial infarction and thereafter received disability benefits until September 1982. On March 28, 1978, plaintiff wrote a letter to the Social Security Administration ("SSA") informing SSA that he had returned to work part-time in November 1977. In this letter, plaintiff asked SSA to advise him what to do because he stated that he was not familiar with the rules. Plaintiff received no response to this letter. He continued to work until either May or July of 1979.[1] In July 1979, plaintiff underwent an operation for carcinoma of the colon and was hospitalized until September 3, 1979. He has not worked since then.

On September 10, 1982, SSA informed plaintiff that his period of disability had ceased as of September 1978 and that disability payments should have ceased after November 1978. To secure a protective

---

1. Although plaintiff has not disputed the Administrative Law Judge's finding that he worked until July 1979, a review of the record reveals some discrepancy as to the actual date plaintiff stopped working. In a hearing before the Administrative Law Judge (ALJ) held on March 1, 1984, plaintiff appeared to testify that he had worked until July 1979. *See* Tr. 40, 50; *see also* Report of Contact, March 15, 1983 (Tr. 204).

Other documents before the ALJ, however, indicate that plaintiff may have stopped working in May 1979. *See, e.g.,* Disability Report of March 9, 1983 (Tr. 101); Vocational Report of June 3, 1983 (Tr. 111). Because the resolution of this discrepancy is not relevant to this Court's determination on the issue of waiver, it will not be addressed.

filing date, plaintiff, then 63 years old, filed for retirement insurance benefits on October 5, 1982.[2] On March 9, 1983, plaintiff filed a new application for disability insurance benefits alleging a disability based on his tumor and heart condition and alleging an onset date of May 15, 1979. This application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held on March 1, 1984. The Administrative Law Judge ("ALJ") before whom plaintiff appeared considered the case *de novo* and issued a decision on August 20, 1984 finding that plaintiff was not disabled. The ALJ also found that plaintiff had not been entitled to receive disability insurance benefits between December 1978 and September 30, 1982, that plaintiff was at fault in receiving and accepting the overpayment, and that therefore plaintiff was not entitled to a waiver of recovery of the overpayments. This decision became the final decision of the Secretary when it was approved by the Appeals Council on July 3, 1985.

*Discussion*

The sole issue before this Court is whether plaintiff is entitled to a waiver of recovery of the overpayment.[3] For the reasons set forth below, this case is remanded to the Secretary for further proceedings.

A. *The Relevant Statutes and Regulations*

The framework for recovery of overpayments is set forth in 42 U.S.C. § 1383(b)(1), which provides in relevant part that

> The Secretary ... shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual ... who was without fault in connection with the overpayment, if adjustment or recovery on

> account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience....

Under this section, recovery can thus be waived only if it is first found that plaintiff was without fault. The Secretary has promulgated regulations construing the term "fault" as used in this section and enumerating factors to consider in determining whether a person is without fault. First, the term fault "applies only to the individual" and, therefore, even if SSA has "been at fault in making the overpayments, that fact does not relieve the overpaid individual ... from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. Second, in determining whether an individual is at fault, the Secretary must consider "all pertinent circumstances, including [the individual's] age, intelligence, education, and physical and mental condition." *Id.* Furthermore, the Secretary must consider whether the facts show that the incorrect payments resulted from "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect," or from a "[f]ailure to furnish information which he knew or should have known to be material," or whether the individual accepted "a payment which he either knew or could have been expected to know was incorrect." *Id.*

The Secretary's determination as to fault, based on these factors, is a finding of fact and must be upheld by this Court if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Valente v. Secretary of Health & Human Services*, 733 F.2d 1037, 1041 (2d Cir.1984). "Substantial evidence" has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.

2. These benefits are currently being withheld to offset the overpayment of $21,209.20 in disability benefits.

3. The Secretary has also raised a second issue—that is, whether the ALJ's decision regarding plaintiff's March 9, 1983 application for disability benefits should be sustained. Plaintiff, how-

ever, has only raised the issue of waiver before this Court and that is the only issue addressed in this opinion. As plaintiff has argued, however, his belief as to his entitlement to a second period of disability is a factor in determining the waiver issue before this Court.

1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

### B. *The Decision of the ALJ*

It is clear from the record and the decision of the ALJ that the ALJ concluded that plaintiff was not without fault based on the third factor set out in the applicable regulation—that is, that plaintiff accepted a payment that he either knew or could have been expected to know was incorrect.[4] The ALJ noted that plaintiff had earned more than $12,000 in 1978 and stated that it would be "unreasonable to conclude that the [plaintiff] could have considered that his entitlement to disability benefits continued indefinitely into the future, notwithstanding his return to full-time work, merely because he received no reply" to his letter of March 28, 1978. The ALJ noted that while the "trial work" concept[5] was apparently not clear to plaintiff, plaintiff nevertheless had "some obligation of diligent inquiry as to how long he could continue to receive benefits while working full-time." The ALJ also noted that SSA's error in not responding to plaintiff's letter and in not sending plaintiff notice for four years that payments should have stopped after November 1978 did not excuse plaintiff from liability for the overpayments. Finally, the ALJ rejected plaintiff's argument that any payments made after July 1979 would not be overpayments if plaintiff were found to be disabled as of that date due to a new medical impairment.

### C. *Analysis*

Based upon a review of the administrative record and the decision of the ALJ, this Court is unable to determine whether the Secretary's decision is supported by substantial evidence. First, it is unclear whether the ALJ, in reaching his decision,

considered all the relevant factors, including those specifically enumerated in § 404.507. Second, it appears that the ALJ relied on a record that was not fully developed.

As a threshold matter, this Court notes that it is recognized under the relevant statutes and regulations that there are situations in which an administrative mistake will be made and a claimant will receive benefits, through no fault of his or her own, that are not authorized. As one court has noted in an oft-quoted passage:

> The regulations dealing with repayment presuppose that there will be situations in which improper payments are received and retained and the recipient is nevertheless not at fault. Accordingly, it is clear that recipients are not always to be deemed to have knowledge of the law or to be charged with negligence for failure to know it. Rather, all the surrounding circumstances must be taken into account before a finding of negligence can properly be made.

*Cucuzzella v. Weinberger*, 395 F.Supp. 1288, 1295 (D.Del.1975).

In determining whether an individual is at fault, the Secretary must consider, pursuant to § 404.507, all pertinent circumstances, including the individual's age, intelligence, education and mental and physical condition. In the record before this Court, it is unclear whether the ALJ fully evaluated these factors. At the hearing, for instance, plaintiff testified that he was 65 years old, that he had an 8th grade education, and that his wife handled all the family's finances and recordkeeping. Furthermore, in his letter to SSA, plaintiff indicated that he did not know the applicable rules and the ALJ, in his decision, acknowledged that plaintiff was not clear as to the trial work period. In addition to his limited education and his seeming lack of comprehension as to the applicable require-

---

**4.** The ALJ made no finding that plaintiff made an incorrect statement or failed to furnish material information.

**5.** Under 42 U.S.C. § 423(e), a trial work period is permitted and is defined in 20 C.F.R. § 404.1592 as "a period during which [a claim-

ant] may test [his or her] ability to work and still be considered disabled." Under 20 C.F.R. § 404.1592(e)(1), this period ended for plaintiff at the close of the ninth month that he worked. Under § 423(e), disability payments should have stopped at the end of November 1978.

ments, there is some evidence that plaintiff may have suffered some memory loss as evidenced by his testimony at the hearing that he had never notified SSA of his return to work when, in fact, plaintiff wrote a letter so notifying SSA. Finally, plaintiff's attorney testified that plaintiff believed that he was entitled to continued benefits because of his second illness in 1979. Certainly, these factors are relevant to the question of what plaintiff knew or should have known. On remand, the Secretary must address these factors.

Perhaps more importantly, the ALJ, in his decision, did not question or even discuss plaintiff's credibility. Rather, the ALJ appears to have relied on an objective standard of reasonableness in concluding that it was *unreasonable* for plaintiff to believe that he was entitled to continue receiving benefits. Without giving any other explanation, the ALJ then concluded that plaintiff knew or should have known that he could not continue receiving benefits and that therefore plaintiff was not without fault.

When credibility appears to be a crucial factor in determining whether a claimant was without fault, "the ALJ must ... state[ ] explicitly whether he believed the witness's testimony." *Valente*, 733 F.2d at 1045 (citations omitted). In *Valente*, the Second Circuit concluded that without such a finding, given the context of the case before it, it was "at a loss to discern the ALJ's rationale for his determination that the [plaintiffs] were at fault." *Id.* While the factual dispute in *Valente* was unlike the one before this Court, it is nevertheless clear that credibility is a critical factor in this case as well and must be addressed on remand. Specifically, the Secretary must address the issue of what plaintiff, an elderly person of limited education and apparent lack of sophistication, actually knew or should have known regarding the cor-

rectness of accepting these payments. *See Valente*, 733 F.2d at 1045 & n. 10. As one court has noted, "[t]he fault determination requires a reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have." *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir.1984) (citing *Elliott v. Weinberger*, 564 F.2d 1219, 1233 n. 19 (9th Cir.1977), *aff'd in part and rev'd in part*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).[6]

While the Secretary has raised several arguments before this Court in support of his conclusion that plaintiff's assumption that he was entitled to continue receiving benefits until September 1982 was unreasonable, these arguments do not answer the question of what plaintiff actually knew or should have been expected to know. For instance, the Secretary argues that plaintiff signed a form in 1974 when he first applied for disability benefits stating that he would notify SSA if he returned to work. Plaintiff clearly abided by this agreement when he wrote to SSA in March 1978 regarding his return to work. The ALJ nevertheless concluded that plaintiff "had some obligation of diligent inquiry" and could not rely on SSA's failure to respond to his letter. The Secretary has elaborated on the ALJ's conclusion by arguing that plaintiff had no way of knowing whether SSA received his letter and could not therefore reasonably rely on SSA's silence as an implicit endorsement of his continued entitlement to benefit checks.

While it is well established that a mistake by SSA will not relieve a claimant of liability when the claimant is found to be at fault, *see, e.g.,* 20 C.F.R. § 404.507; *Valente*, 733 F.2d at 1042; *Morgan v. Finch*, 423 F.2d 551 (6th Cir.1970), this conclusion requires a showing that plaintiff *was* at fault. In this case, plaintiff is not arguing

---

6. This Court also finds appropriate the reasoning from an earlier decision quoted with approval by the court in *Harrison*. In construing identical language regarding fault under another section of the Social Security Act, the Ninth Circuit found that "the decision which must be reached in a fault determination is highly subjective, highly dependent on the interaction be-

tween the intentions and state of mind of the claimant and the peculiar circumstances of his situation." *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir.1977) (construing 42 U.S.C. § 404(b), *aff'd in part and rev'd in part*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), *quoted in Harrison*, 746 F.2d at 482 (construing 42 U.S.C. § 1383(b)).

that his belief in entitlement was based solely on SSA's silence; rather, plaintiff argues that he also believed he could continue receiving benefits during a trial work period, and he made it clear in his letter to SSA and in his testimony before the ALJ that he was unclear as to how long the trial work period would last.[7]

Plaintiff's argument is supported by at least two reported cases. For instance, in a case involving similar facts, the Fifth Circuit reversed the Secretary's denial of waiver. *Rini v. Harris*, 615 F.2d 625 (5th Cir.1980). In *Rini*, the plaintiff had returned to work on February 1, 1972 and so notified SSA on February 16, 1972. Due to an administrative error, SSA continued to send payments until 1974, well past the end of the trial work period. The Secretary denied the plaintiff's request for waiver of the overpayment because of a finding by the Appeals Council that the plaintiff had not been without fault. In reaching its decision that the plaintiff had been without fault, the Fifth Circuit relied first on what it perceived to be a particularly important consideration—that is, that the plaintiff had promptly notified SSA of his return to work. The court then concluded that:

[t]he fault in this case belongs at the agency's doorstep. [The plaintiff] testified that he didn't know when the trial period terminated. He relied on the explanation that the people at Social Security must know what they are doing. In this instance, *he may have been in error, but if so, the error was nevertheless a reasonable one.* Taking into account the nature of his disability, his education, his past experiences and his other limitations that his testimony make apparent, the Secretary's claim that [the plaintiff] acted unreasonably in not knowing that he was being overpaid offends both equity and good conscience. There may have been a scintilla of evidence indicating some fault on [the plaintiff's] part, but it is nothing more.

*Id.* at 627 (emphasis added).[8]

In another case lending support to plaintiff's claims, a district court rejected the Secretary's argument that a plaintiff's "awareness of the trial work period should have been sufficient notice that her eligibil-

---

7. The Secretary argues that plaintiff's letter of March 28, 1978 indicates that "plaintiff was aware that his return to work might be a significant factor in his continued receipt of disability benefits." From this observation, the Secretary reasons that plaintiff "knew or should have known that because he was working, he might not be eligible to receive disability benefits, and should have obtained further information from SSA." Because plaintiff failed to do so, the Secretary concludes that plaintiff was at fault in causing the overpayment.

This argument is unpersuasive for a number of reasons. First, plaintiff testified that he believed he could work and receive benefits for some period of time during the trial work period and he further testified that he was unclear as to the duration of this period. Therefore, if his testimony is credible, there is no reason to conclude that he *knew* that his return to work ended his entitlement to benefits. In *Valente*, the Second Circuit dealt with the issue of whether a claimant and his wife *knew* they were not entitled to benefits. The Second Circuit distinguished a plaintiff's "belief" and a plaintiff's "actual knowledge." 733 F.2d at 1045 & n. 10. In the case before this Court, applying the reasoning of *Valente*, it could be argued that while plaintiff believed his return to work might at some point end his disability, he had no actual knowledge of when that would be. Therefore,

the present record does not support the Secretary's argument.

Second, as in *Valente*, plaintiff believed that as of May 15, 1979, he was again disabled and unable to work. There is no evidence to support a conclusion that he knew that payments made after the onset of his second disability was incorrect.

Finally, neither the ALJ nor the Secretary has cited authority for the proposition that plaintiff had an affirmative duty to follow up his March 28, 1978 inquiry to SSA when he received no response. Indeed, this Court has found some authority supporting a conclusion that plaintiff's failure to do so was not necessarily unreasonable. *See* discussion *infra* of *Rini v. Harris*, 615 F.2d 625 (5th Cir.1980); *Frasier v. Harris*, 495 F.Supp. 260 (D.Col.1980).

8. In *Rini*, the Fifth Circuit was concededly bothered by the Appeals Council's mishandling of the plaintiff's request for a waiver. The Appeals Council had based its finding of fault on an erroneous determination that the plaintiff had not notified SSA of his February 1972 return to work until February 1974. Furthermore, the plaintiff in *Rini* had been suffering from a nervous breakdown, which arguably made his argument for a finding of lack of fault stronger than in the case before this Court. Nevertheless, this Court finds the reasoning of the Fifth Circuit applicable to this case as well.

ity had expired after nine months of work." *Frasier v. Harris,* 495 F.Supp. 260, 263 (D.Col.1980). In *Frasier,* the court reasoned that because "... eligibility does not necessarily expire automatically at the end of nine months[,] ... the mere passage of a nine-month trial period, without an administrative determination of the plaintiff's capacity to engage in substantial gainful activity, should not suffice to remove a person's disability status." *Id.* Therefore, absent this determination, the plaintiff had no reason to believe that she was not entitled to continued benefits and could not therefore be found to have been at fault.

The Secretary has raised another argument in support of his conclusion that plaintiff was not without fault. The Secretary states that an individual is "ordinarily" given written material when he or she begins receiving benefits. This material explains such concepts as the trial work period and the need to inform SSA of a return to work. There is, however, nothing in the record that indicates that plaintiff ever received such written material nor does the Secretary specifically allege that he did. This absence in the record, coupled with plaintiff's testimony that he was unclear about the trial work period, certainly impairs the Secretary's argument that plaintiff knew or should have known that he was not entitled to the benefits.[9]

The absence of evidence that plaintiff received this material is not the only gap in the record. In its letter of September 16, 1982, notifying plaintiff that his benefits should have stopped in 1978 and would stop as of the date of the letter, SSA stated that plaintiff was notified on July 10, 1978 that his benefits might stop after an investigation of his work activity. Plaintiff testified before the ALJ that he never received the July 10, 1978 notification and there is no evidence in the record showing that such notice was sent.

On this record, this Court cannot conclude that the Secretary's determination that plaintiff was not without fault is supported by substantial evidence. On remand, the Secretary must consider the foregoing matters and must develop the record fully. Furthermore, the Secretary must consider the Second Circuit's recognition in *Schwingel v. Harris,* that "lack of memory or understanding may be a sufficient basis for a finding of lack of fault, taking into account, as the agency's regulations expressly require, the plaintiff's age, *comprehension, memory,* and physical and mental condition." 631 F.2d 192, 198 (2d Cir.1980) (emphasis in original). If, considering this admonition, the ALJ again concludes that plaintiff was not without fault, the ALJ must state his rationale for so concluding. *See Valente,* 733 F.2d at 1046.

Finally, because the ALJ found that plaintiff was not without fault, he correctly did not consider the second part of the statutory test for waiver—that is, whether repayment would defeat the purposes of the Act or would be against equity and good conscience. On remand, if it is found that plaintiff was without fault, these other statutory requirements must be considered.

SO ORDERED.

---

9. *Cf. Schwingel v. Harris,* 631 F.2d 192, 197 N. 10 (2d Cir.1980) (in discussing the Secretary's argument, in another context, that there should be a presumption of administratives regularity in informing claimant of SSI eligibility requirements, court notes that absence in plaintiff's file of standard application form giving eligibility and reporting requirements "certainly weakens the agency's argument").