Joyce **LIEBERMAN**, Plaintiff,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, Defendant.

No. 93 Civ. 1324 (JES).

United States District Court,
S.D. New York.

March 17, 1995.

Max D. Leifer, P.C., Astoria, NY (Max D. Leifer, Ira H. Zuckerman, of counsel), for plaintiff.

Mary Jo White, U.S. Atty. for the S.D. of N.Y., New York City (Susan D. Baird, Asst. U.S. Atty., of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff brings the instant action pursuant to §§ 405(g) and 1383(c)(3) of the Social Security Act (the "Act"), to challenge a final determination of the Secretary of Health and Human Services (the "Secretary") denying her request for a waiver of recovery of an overpayment of disability insurance benefits. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, both parties have moved for a judgment on the pleadings. For the reasons that follow, the action is remanded for further administrative proceedings.

## BACKGROUND

Plaintiff Joyce Lieberman, a fifty year-old female, became unable to work due to a diabetic condition in March 1988. *See* Transcript of the Administrative Record ("Tr.") 19–21, 45. On July 28, 1988, Lieberman applied for disability insurance benefits. *Id.* at 57. In February 1989, she was awarded disability benefits, with her disability relating back to July 2, 1988. *Id.* at 46. On March 20, 1989, she commenced full-time employment with Telstar, as a telephone answering service operator. *Id.* at 22, 60–63. On May 11, 1989, she advised defendant of her employment activity by filing a work activity report. *Id.* at 60–63.

By letter dated June 29, 1989, the Social Security Administration ("SSA") notified Lieberman that she was entitled to a nine-month trial work period,[1] which would expire in November 1989. Tr. 33–34. The notification further provided that her claim would be reviewed at that time. *Id.* On December 3, 1990, Lieberman filed another work activity report with defendant. *Id.* at 64–67. Following an inquiry by the SSA, Telstar confirmed her continued employment on December 7, 1990. *Id.* at 35–37.

Through February 1990, Lieberman continued to be employed by Telstar and defendant continued to issue her disability benefits. Tr. 39. By letter dated January 28, 1991, however, the SSA informed her that she no longer qualified for disability benefits. *Id.* at 38–40, 42–45. By letter dated February 26, 1991, the SSA further advised her that, because she had been working full-time while receiving disability benefits for the eleven-month period of March 1990 through January 1991, she had received an overpayment of $5,153.80. *Id.* at 47–48.

On March 19, 1991 and June 17, 1991, Lieberman requested that the SSA waive her obligation of repayment. Tr. 68–97. By letters dated May 11, 1991 and August 8, 1991, those requests were denied. *Id.* at 52–55. On September 24, 1991, a personal conference was held, and on October 11, 1991, the initial denial was determined to be correct. *Id.* at 56–58. At Lieberman's request, an administrative hearing was held before an administrative law judge ("ALJ") on June 23, 1992. *Id.* at 59. On August 17, 1992, the ALJ held that she was not entitled to a waiver of recovery of the overpayment. *Id.* at 10–13. Upon its affirmance by the Appeals Council, the ALJ's decision became the final decision of the Secretary. *Id.* at 3–4.[2]

---

1. Under applicable regulations, a trial work period is defined as "a period during which [a claimant] may test [his or her] ability to work and still be considered disabled." 20 C.F.R. § 404.1592. During a trial work period, a disabled individual may be employed for up to nine months, either continuously or intermittently, without losing disability benefits. At the conclusion of the nine-month period, the SSA determines whether the employment is substantial and gainful. If the employment is substantial and gainful, disability benefits are terminated after an additional three-month adjustment period. *Id.*

2. At the hearing, Lieberman appeared before the ALJ and was represented by counsel.

## DISCUSSION

The sole issue before the Court is whether plaintiff is entitled to a waiver of recovery of the overpayment. For the reasons set forth below, this case is remanded to the Secretary for further proceedings. *See Gold v. Secretary of Health, Educ. & Welfare,* 463 F.2d 38, 44 (2d Cir.1972).

Pursuant to sections 405 and 1383 of the Act, the Secretary may recover an overpayment of disability insurance payments. The Act sets forth the framework for the recovery and waiver of overpayments, and provides in pertinent part:

> The Secretary ... shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoid penalizing such individual ... who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity and good conscience ...

42 U.S.C. § 1383(b)(1)(B). Thus, in order to waive recovery under the Act, a recipient must demonstrate that he was without fault, and that recovery would defeat the purposes of the Act or would be inequitable. *See Chlieb v. Heckler,* 777 F.2d 842, 846 (2d Cir.1985); *Center v. Schweiker,* 704 F.2d 678, 680 (2d Cir.1983).

Pursuant to its delegated rulemaking authority, the Secretary has promulgated regulations construing the term "fault" and has enumerated factors to be considered in determining whether an individual is "without fault." An individual is at fault where the overpayment resulted from "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect," 20 C.F.R. § 404.507(a), or from a "[f]ailure to furnish information which he knew or should have known to be material," *id.* at § 404.507(b), or where the individual accepted "a payment which he either knew or could have been expected to know was incorrect," *id.* at § 404.507(c). Moreover, because the term fault "applies only to the individual,"

even if the SSA "may have been at fault in making the overpayments, that fact does not relieve the overpaid individual ... from liability for repayment if such individual is not without fault." *Id.* at § 404.507. Finally, in making a determination regarding fault, the Secretary must consider "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations ... the individual has." *Id.*

The Act provides that, if supported by substantial evidence, factual findings made by the Secretary shall be conclusive. 42 U.S.C. § 405(g). In the social security context, substantial evidence has been defined as "'more than a mere scintilla ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Accordingly, if supported by substantial evidence, the Court must uphold the Secretary's determination that Lieberman was not "without fault" in causing the overpayment.

Based upon the administrative record and decision in this case, it is clear that the ALJ concluded that Lieberman was not without fault based upon the third factor enumerated in the applicable regulation: that is, Lieberman accepted a payment that she either knew or could have been expected to know was incorrect.[3] The ALJ emphasized that Lieberman was provided "a thorough explanation of her reporting responsibilities when she filed her application." Tr. 12. The ALJ also asserted that "from time to time check stuffers and other correspondence are sent to beneficiaries to refresh their minds about Social Security reporting responsibilities," although that statement does not appear to be based upon any evidence in the record. *Id.* The ALJ therefore determined that Lieberman should have questioned the continued receipt of benefit checks, or have otherwise attempted to return them. *Id.* In the end,

---

**3.** The ALJ made no finding regarding whether Lieberman made an incorrect statement, *see* 20 C.F.R. § 404.507(a), or failed to furnish material information, *id.* at § 404.507(b).

the ALJ concluded that she "failed to exercise a high degree of care in handling her disability payments and reporting responsibilities." *Id.*

However, it is unclear from the record whether the ALJ, in reaching his decision, considered the relevant factors enumerated in § 404.507 or the applicability of § 404.510a. Moreover, the ALJ failed to make explicit findings concerning Lieberman's credibility.

In determining whether an individual is without fault, the Secretary must consider all pertinent circumstances, including the individual's age, intelligence, education, and physical and mental condition. *See* 20 C.F.R. § 404.507. Although the ALJ recited these criteria in his opinion, he failed to indicate how, or even whether, he applied them to the facts of this case. At the hearing, for example, the ALJ failed to inquire about Lieberman's level of education or investigate her relative intelligence. Moreover, Lieberman testified that she took a multitude of medications, including synthroid for her thyroid condition and lithium for her manic depressive behavior.[4] Tr. 26. Despite that testimony, the ALJ did not explore her physical or mental condition any further. Finally, Lieberman testified that she believed that she was entitled to continued benefits. *Id.* at 29–30. On remand, the Secretary must consider these factors as required by the applicable regulation. *See, e.g., Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1043 (2d Cir.1984); *Torre v. Bowen,* 673 F.Supp. 1180, 1182–83 (E.D.N.Y.1987).[5]

In addition, the ALJ apparently failed to consider whether Lieberman accepted the overpayments "because of reliance on erroneous information from an official source within the [SSA] ... with respect to the interpretation of a pertinent provision of the ... Act or regulations pertaining thereto." 20 C.F.R. § 404.510a. As required, Lieberman promptly notified the SSA of her return to work. *See Rini v. Harris,* 615 F.2d 625, 627 (5th Cir.1980) (prompt notification is evidence of lack of fault).

In the June 1989 notification, the SSA advised Lieberman that her "claim will be reviewed from time to time to see if [she is] still eligible for benefits" and that she would "be contacted if there is any question as to whether [her] eligibility continues." Tr. 33. Although the notification advised that the trial-work period would expire in November 1989, it did not suggest that her disability benefits would terminate at that time. *Id.* As aptly stated by one court, "the mere passage of a nine-month trial period, without an administrative determination of the plaintiff's capacity to engage in substantial gainful activity, should not suffice to remove a person's disability status." *Frasier v. Harris,* 495 F.Supp. 260, 263 (D.Colo.1980).

Moreover, in her waiver applications and at the hearing, Lieberman claimed that she telephoned the SSA on numerous occasions concerning her benefits. Tr. 29–30, 68, 83. The SSA purportedly advised her that the benefits would terminate in July 1992. *Id.* Nonetheless, the ALJ neither mentioned § 404.510a in his initial recitation of the pertinent regulations nor otherwise indicated that he considered its potential application in this case. On remand, the Secretary must also consider the applicability of this regulation. *See, e.g., Valente,* 733 F.2d at 1044; *Dorman v. Harris,* 633 F.2d 1035, 1040 (2d Cir.1980).[6]

---

4. As a general definition, manic depression is a mood regulation disorder which may "affect the entire psychic spectrum of perceptions, thoughts, and behavior." 3 Lawyers' Medical Encyclopedia § 17.16 (3d ed. 1983). Although frequently prescribed to treat manic depression, the use of lithium may cause side effects, including fatigue, mental lethargy and memory impairment. 3B Attorneys' Textbook of Medicine ¶ 106.36(3a) (3d ed. 1994). Moreover, lithium should be used cautiously in patients, such as Lieberman, who are experiencing thyroid dysfunction. *Id.* at ¶ 106.36(1).

5. The Secretary argues that Lieberman testified that the benefits were to be terminated in November 1989. In light of her overall testimony, however, the record does not support a finding of actual knowledge. *See Valente,* 733 F.2d at 1045 n. 10.

6. Defendant argues that, if anything, Lieberman relied upon erroneous factual information, rather than an erroneous interpretation of the Act or its regulations. This argument is unpersuasive. Lieberman testified that she was told that she would be advised as to whether there was any change in her eligibility for benefits. A determi-

Although the ALJ may have implicitly rejected Lieberman's testimony concerning the telephone calls, and therefore rejected the applicability of § 404.510a, he failed to make an explicit finding regarding her credibility for the record. An evaluation of fault normally requires "an assessment of the recipient's credibility ... to distinguish a genuine hard luck story from a fabricated tale." *Schwingel v. Harris,* 631 F.2d 192, 197 (2d Cir.1980) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 696–97, 99 S.Ct. 2545, 2555, 61 L.Ed.2d 176 (1979)). Where, as here, an assessment of credibility is necessary to determine whether a claimant was without fault, the ALJ must make an explicit finding for the record. *See Valente,* 733 F.2d at 1045; *Torre,* 673 F.Supp. at 1183. Absent such an explicit finding, the Court cannot ascertain the underlying rationale for the determination of fault.

### CONCLUSION

The determination of the Secretary is vacated. The case is remanded for further administrative proceedings.

It is **SO ORDERED.**

nation of eligibility necessarily requires an application of the Act and regulations promulgated thereunder to the facts of her case.